Edward J. Greenfield, J.
Plaintiff, New 'Central Jute Mills Co., Ltd. moves for summary judgment in lieu of complaint pursuant to CPLR 3213 for the sum of $505,074.73 with interest. The motion raises certain basic questions under the newly effective “ Uniform' Foreign Country Money-Judgments Recognition Act”, article 53 of the CPLR (L. 1970, ch. 981, eff. Sept. 1,1970).
The motion is based upon two judgments obtained against defendant City Trade & Industries, Ltd. in the High Court of Calcutta, India. Those judgments confirmed two arbitration awards obtained by plaintiff against defendant before an Indian arbitration panel. The awards, which were obtained by default, were based upon 18 unpaid bills of exchange drawn on the *654 defendant in connection with its purchase of jute carpet backing cloth under a contract entered into between the parties at Calcutta, India, on the 21st day of November, 1959.
Paragraph 25 of the agreement provided: “ that in the event of any dispute or difference arising between the parties hereto in respect to this agreement, unless resolved amicably, the same shall be referred by either party for arbitration in India * * * arbitration award of the aforesaid would be fully binding on both the parties, and the provisions of the Indian Arbitration Act shall apply. ’ ’
The defendant CTI commenced an accounting action against New Central in the New York Supreme Court for the sum of $3,447,393.43, in September 1965, claiming it was entitled to credits against its drafts because New Central was obliged to buy back unsold jute. Plaintiff New Central instituted arbitration proceedings in India in July, 1966 with respect to 18 of the bills of exchange and in September, 1966 with respect to 14 of the bills of exchange. During late 1966 and early 1967 New 'Central pressed for the arbitration in India, while the New York accounting action remained quiescent.
On August 3, 1966, defendant CTI’s attorneys wrote to New Central announcing that they were refusing to participate in arbitration proceedings. There followed numerous communications, advising defendant of New Central’s intention to proceed with arbitration and announcing that their failure to participate would be at their own risk. The Indian arbitration tribunal noted defendant’s default and wrote it, giving it additional time, and calling its attention to the consequences of continued default.
While this was going on, on April 21, 1967, New Central moved in New York to stay CTI’s accounting action and to compel it to arbitrate its accounting claims in India. This court, by order of Mr. Justice Sarafite, directed a preliminary trial of the issues as to the legality and the validity of the agreement. Mr. Justice Rosenberg found after trial that the contract was not illegal and that the arbitration provisions were enforceable. That decision was affirmed by the Appellate Division, First Department in City Trade & Ind. v. New Cent. Jute Mills Co. (30 A D 2d 513) and was affirmed by the Court of Appeals at 25 N Y 2d 49.
While the trial on the validity of the agreement was proceeding in New York, CTI was notified of all adjourned hearing dates in the Indian arbitration and was informed that the arbitration would proceed ex parte if CTI did not attend. CTI *655 did not, and the arbitrators made their awards in Nevomber, 1967, forwarding certified copies of the awards to CTI.
After the preliminary trial and decision in this court finding the underlying contract valid and enforceable, the parties entered into a stipulation on January 30, 1968, which provided for a stay of the enforcement of this court’s order directing arbitration of the issues in the accounting action pending the determination of the appeal. After the Appellate Division’s affirmance, a further stipulation was made, extending the stay until after the determination of the appeal by the Court of Appeals. That final affirmance was not until July, 1969.
While the appeals were pending, New Central proceeded to file its arbitration awards in the High 'Court at Calcutta, on February 2, 1968, pursuant to the Indian Arbitration Act. Although CTI was notified that judgment would be entered on those awards on April 22, 1968, it took no steps in India to forestall the entry of judgment on that date.
Plaintiff New Central now urges that the judgments on the arbitration awards entered in the High Court at Calcutta are fully enforceable in New York. Defendant CTI, on the other hand, contends that the judgments were obtained .contrary to the stipulation staying arbitration proceedings, and should not be given effect here.
This court, under well-grounded rules of comity, will recognize and give effect to a foreign judgment if the foreign court had jurisdiction over the parties, the judgment was not obtained by fraud, and that judgment does not contravene the public policy of this State. See Dunstan v. Higgins (138 N. Y. 70, 75): “Where a party is sued in a foreign country, upon a contract made there, he is subject to the procedure of the court in which the action is pending, and must resort to it for the purpose of his defense, if he has any, and any error committed must be reviewed or corrected in the usual way.”
Recognition is accorded to the foreign judgment whether entered after an adversary proceeding or upon default. As stated by Mr. Justice Brandéis in Riehle v. Margolies (279 U. S. 218, 225): “ A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.”
Hence, once parties have agreed to submit their controversy to a foreign arbitrator, and to be bound by foreign law, they cannot relitigate their claims or defenses in domestic litigation. (See von Engelbrechten v. Galvanoni & Nevy Bros., 59 Misc *656 2d 721 [per Stecher, J.] and Plugmay, Ltd. v. National Dynamics Corp., 48 Misc 2d 913 [per Shahleck, J.])
The rules of comity have been developed and enunciated in the decisional law of our State and have now been given statutory sanction under the recently enacted Uniform Foreign Country Money-Judgments Recognition Act (L. 1970, ch. 981, eff. Sept. 1, 1970), now embodied in CPLR 5301-5309. (On the basis for this statute, see Judicial Conference Study by Professor Barbara Kulzer, 13th Annual Report of N.Y. Judicial ■Conference, 1968, pp. 248-299.) The provisions of that article apply ‘ ‘ to any foreign country judgment which is final, conclusive and enforceable where rendered ” (CPLR 5302). CPLR 5303 provides that the foreign judgment ‘ ‘ is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Such a foreign judgment is enforceable by”, among other things, “ a motion for summary judgment in lieu of a complaint ’ ’.
CPLR 5304 sets forth the only grounds upon which recognition may not be accorded to a foreign judgment. The grounds set forth for nonrecognition include lack of jurisdiction over person or subject matter, lack of opportunity to defend, judgment obtained by fraud, or judgment based upon an action repugnant to the public policy of the State. Another ground for nonrecognition is that a foreign proceeding was contrary to an agreement between parties ‘ ‘ under which the dispute in question was to be settled otherwise than by proceedings in that court ” (subd. 6).
Among the stated bases for personal jurisdiction is the provision, CPLR 5305 (subd. [a], par. 3), that the foreign judgment shall not be refused recognition if ‘ ‘ the defendant prior to the commencement to the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved. ’ ’
There is no question but that the defendant CTI agreed by contract to arbitrate in India pursuant to the provisions of the Indian Arbitration Act. That statute provides in section 31 thereof:
“ (2) Notwithstanding anything contained in any other law for the time being in force and save as otherwise provided in this Act all questions regarding the validity, effect or existence of an award or an arbitration agreement between the parties to the agreement or person claiming under them shall be decided by the Court in which the award under the agreement has been, or may be, filed, and by no other Court.” (Emphasis supplied).
*657 “ (3) All applications regarding the conduct of arbitration proceedings or otherwise arising out of such proceedings shall be made to the Court where the award has been, or may be, filed, and at no other Court.” (Emphasis supplied).
It is clear, therefore, that any and all defenses available to the defendant had to be raised in the Indian courts, or not at all. While it may be open to debate whether or not the successive stipulations entered into during the pendency of the appeals in New York upon the validity of the agreement between the parties purported to stay proceedings in India, any such contention had to be placed before the Indian tribunal which had the sole power to determine whether or not to proceed with entry of judgment on the arbitration awards. The existence of the stipulations was a potential defense, or at least a dilatory defense which could be raised before the Indian court. Defendant CTI was placed on notice that plaintiff was seeking to confirm the awards and enter judgment in the High Court at Calcutta. Defendant chose deliberately not to assert any such defense, and to ignore the Indian proceedings. This, the defendant did even though it had a written agreement that all disputes were to be settled by proceedings in India. The stipulations were not agreements that the disputes would be settled in other than Indian courts, and hence would not bar recognition of the Indian judgments under CPLR 5304.
Having been amply notified of the plaintiff’s intention to proceed with the confirmation of the awards in India, defendant now can hardly claim to have been defrauded or misled. Nothing in this record indicates that the Indian judgment obtained by the plaintiff is repugnant to the public policy of this State nor, more than ample notice having been accorded to defendant at all times, can it be claimed that the judgment rendered was incompatible with our notions of due process.
Section 32 of the Indian Arbitration Act provides that “ no suit shall lie on any ground whatsoever for a decision upon the existence, effect or validity of an arbitration agreement or award, nor shall any arbitration agreement or award be set aside, amended, modified, or in any way affected otherwise than as provided in this Act.” Defendant was obligated if it sought to prevent the confirmation of the award to proceed pursuant to section 33 of the Indian Arbitration Act which provided:
“ Any party to an arbitration agreement or any person claiming under him desiring to challenge the existence or validity of an arbitration agreement or an award or to have the effect *658 of either determined shall apply to the Court and the Court shall decide the question on affidavits:
“ Provided that where the Court deems it just and expedient, it may set down the application for hearing on other evidence also ”.
In the face of its explicit consent to those provisions, among others, defendant cannot now be heard to challenge the validity of the Indian judgment solely on the alleged ground that there was a stipulation in existence under which all proceedings were to he stayed. Whether that was so or not was solely for the determination of the Indian courts.
Accordingly, plaintiff’s motion for summary judgment in lieu of complaint is granted and defendant’s cross motion to dismiss is denied, and judgment shall be entered herein for the plaintiff in the sum of $505,074.73, with interest from the 22nd day of April, 1968.