**BANK OF MONTREAL, a Foreign Corporation, Plaintiff,**

v.

**Jack KOUGH, also known as John Keller Kough, Defendant.**

**No. C–76–1307–CBR.**

United States District Court,
N. D. California.

April 28, 1977.

Park, Swaner & Leslie, Arthur A. Park, Jr., Cooley, Godward, Castro, Huddleson & Tatum, Frank D. Tatum, Jr., Craig H. Casebeer, San Francisco, Cal., for plaintiff.

Rusconi, Foster & Thomas, J. Robert Foster, Morgan Hill, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This case involves a foreign corporation, plaintiff Bank of Montreal ("Bank"), and a California resident, defendant Jack Kough also known as John Keller Kough ("Kough"). Cross-motions for summary judgment are presently before the Court and there appearing no material facts in issue, the matter is ripe for determination.

The case arose out of a breach of contract of guarantee. Kough is on the Board of Directors of Arvee Cedar Mills, Ltd., located in British Columbia, Canada. The parties admit that on August 8, 1973, the Bank entered into guarantee agreements with Kough and with one Merlin William Thompson, pursuant to which each agreed to guarantee the payment of all present and future debts of Arvee Cedar Mills, Ltd., to the extent of $718,000 plus interest from date of demand for payment. The guarantees were given by Kough and Thompson in return for the Bank's agreement to do business with Arvee Cedar Mills, Ltd.

The Bank subsequently brought an action on August 14, 1975, for breach of contract in the Supreme Court of British Columbia. The Bank alleged that there was due and owing $769,000 from Arvee Cedar Mills, Ltd., and that defendant Kough, as well as Thompson, as signatories to the guarantee contract were jointly and severally liable for $842,000.

On November 23, 1975, Kough was personally served in Morgan Hill, California, with a Summons and Notice of Concurrent Writ of Summons from the Supreme Court of British Columbia. In the papers served, Kough was informed of the charges against him and was instructed to enter an appearance within 21 days or face a possible default judgment. Kough did not appear in British Columbia and a default judgment was entered against him on January 16, 1976, in the amount of $842,278.75.

Thereafter, the Bank commenced the present action for foreign money-judgment against Kough in this Court on June 25, 1976. Plaintiff asked for the full amount of the British Columbia judgment plus 5% interest from the date of judgment. Jurisdiction is based on diversity and the amount in controversy is greater than $10,000. 28 U.S.C. § 1332.

In his Answer and Counterclaims filed July 30, 1976, defendant Kough alleged failure to state a claim upon which relief can be granted, denied plaintiff's averments relating to the Canadian judgment, and denied that the judgment was "duly rendered" because he never appeared and no original process or summons was served on him in British Columbia. Kough further alleged that plaintiff represented to him that the extent of Kough's personal liability would be limited to $250,000, that Kough was signing as an officer and director of Arvee Cedar Mills, Ltd., and that in return for the guarantee, plaintiff would extend long-term financing for the repayment of $718,-000 already extended by the date of execu-

tion of the contract for at least three years in return for a guarantee of $250,000 secured by $380,000 worth of IBM stock. Defendant Kough admits, however, that the written contract made him liable for $718,000 at 7¾% interest. The Bank alleges interest at 9¾%. Kough alleged that the Bank failed to extend long-term financing to Arvee Cedar Mills, Ltd., and that the Bank materially altered the agreement between itself and Kough by extending Arvee's payment deadline, increasing the interest rate, and accepting payments from Arvee, all without Kough's knowledge.

Defendant makes three counterclaims alleging fraud and tortious interference with a business interest.

■ On December 17, 1976, cross-motions for summary judgment were filed by the parties. The main issues raised on the cross-motions for summary judgment are (1) whether Kough agreed to submit to the personal jurisdiction of the courts of British Columbia when he signed the guarantee; (2) whether there are other bases of personal jurisdiction over Kough that this Court will recognize; (3) whether other considerations would prevent recognition of the foreign judgment if it is found that the British Columbia court had personal jurisdiction; and (4) whether defendant's counterclaims should be dismissed as *res judicata.* Because this is a diversity case, California substantive law will be applied to determine the effect of the British Columbia judgment. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ California has adopted the Uniform Foreign Money-Judgments Recognition Act which governs this action. California Code of Civil Procedure ("C.C.P.") §§ 1713 *et seq.* Under these sections, a foreign money-judgment which is final and conclusive and enforceable where rendered is conclusive between the parties to the extent that it grants a recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit. C.C.P. §§ 1713.2, 1713.3. However, a foreign judgment is not conclusive

in California if the foreign court did not have personal jurisdiction over the defendant (C.C.P. § 1713.4(a)(2)). It need not be recognized if (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend (C.C.P. § 1713.-4(b)(1)); (2) the judgment was obtained by extrinsic fraud (C.C.P. § 1713.4(b)(2)); or (3) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action (C.C.P. § 1713.4(b)(6)). Other provisions for non-conclusiveness or non-recognition of foreign judgments are not relevant to this action.

■ However, a foreign judgment will not be refused recognition for lack of personal jurisdiction if, *inter alia*, "[t]he defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved" (C.C.P. § 1713.5(a)(3)). Nor will the judgment be refused recognition for lack of personal jurisdiction if "[t]he defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state" (C.C.P. § 1713.-5(a)(5)). Finally, "[t]he courts of this state may recognize other bases of jurisdiction" (C.C.P. § 1713.5(b)).

### I

First, it is necessary to determine whether Kough agreed to submit to the personal jurisdiction of the courts of British Columbia. Plaintiff contends that the following paragraph contained in the contract constitutes an agreement to submit to the jurisdiction of the foreign court under C.C.P. § 1713.5(a)(3):

"THIS CONTRACT shall be construed in accordance with the laws of the Province of BRITISH COLUMBIA and for the purpose of legal proceedings this contract shall be deemed to have been made in the said Province and to be performed there,

and the Courts of that Province shall have jurisdiction over all disputes which may arise under this contract, provided always that nothing herein contained shall prevent the Bank from proceeding at its election against the undersigned in the Courts of any other Province or country."

The paragraph appears in a form contract with the identity of the Province completed by hand. Kough points out, and the Court agrees, that the Bank could easily have included a clause in the contract specifically stating that Kough agreed to submit to the personal jurisdiction of the courts of British Columbia if that had been its purpose. The Bank appears to concede this point in its Supplemental Memo of Points and Authorities at page 5.

Earlier, the Bank had cited a New York case interpreting the same section of the Uniform Foreign Money-Judgments Recognition Act which has also been adopted by the State of New York. *New Central Jute Mills Co. v. City Trade and Industry, Ltd.*, 65 Misc.2d 653, 318 N.Y.S.2d 980 (N.Y.Sup. Ct.1971). In that case, the court held that the foreign judgment would be recognized because defendant had agreed to submit to the Indian Arbitration Act. 318 N.Y.S.2d at 982. Kough argues, and the Court agrees, that this case should be distinguished from the case at bar because *Jute Mills* involved two large companies who had *negotiated* a contract in which they agreed to submit to binding arbitration. The parties bargained for the jurisdiction clause, and there was specific consent to a particular Arbitration Act which would govern the resolution of the parties' disputes. In the case at bar, there was only a general agreement that the contract disputes would be governed by the law of British Columbia when it would have been so easy for the Bank to insert a clause in which Kough agreed to submit to the personal jurisdiction of the British Columbia courts.

■ Thus, the paragraph in the contract is not sufficient for the Court to find that Kough agreed to submit to personal juris-

diction of the courts of British Columbia under C.C.P. § 1713.5(a)(3).

## II

■ The second issue to be decided is whether there are other bases of jurisdiction over the defendant in accordance with C.C.P. § 1713.5(b). These other bases of jurisdiction must be, at a minimum, in compliance with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). If the procedure of the court of British Columbia satisfied these due process requirements, then the judgment is conclusive and may be recognized under C.C.P. § 1713.4.

The record shows that plaintiff duly followed British Columbia's "Supreme Court Rules." Under Order XI, Rule 1, service may be allowed out of the jurisdiction:

"1. Service out of the jurisdiction of a writ of summons or notice of a writ of summons may be allowed by the Court or a Judge whenever:

* * * * * *

"e. The action is in respect of a breach committed within the jurisdiction of a contract wherever made, even though such breach was preceded or accompanied by a breach out of the jurisdiction which rendered impossible the performance of the part of the contract which ought to have been performed within the jurisdiction (Ont., r. 25(1)(3)); or

* * * * * *

"j. It appears that the plaintiff has a good cause of action against the defendant upon a contract * * * and that the defendant has assets within the jurisdiction of the value of $200 at least, which may be rendered liable for the satisfaction of the judgment; but the order allowing service shall in each case provide that if the defendant does not appear, the plaintiff shall prove his claim to the satisfaction of a Judge before

judgment shall be entered (Ont., r. 25(j))."

Order II, Rule 4, provides that a notice of writ of summons cannot be issued without leave of the Court or a Judge.

■ In determining whether the service of process under British Columbia law was sufficient to satisfy California requirements for personal jurisdiction, the Court must first consider whether due process requirements were met. The Constitution requires that the defendant receive actual notice and an opportunity to defend. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

First, defendant claims that he did not have adequate notice of the proceedings because plaintiff did not indicate in the Summons or Notice of Concurrent Writ of Summons served upon him that plaintiff intended to rely upon the jurisdictional paragraph in the guarantee contract. This argument cannot succeed because the purpose of requiring notice is to ensure that the defendant knows that an action is being commenced against him and knows the nature of the charges. Defendant was notified that an action for breach of his guarantee contract with the Bank was pending against him in British Columbia, and that the Bank was asking for over $800,000 in damages.

Defendant also argued that he was not given sufficient time to appear in the action. However, the judge in British Columbia specified that defendant had to enter an appearance within 21 days, a time period some thirteen days longer than that allowed for defendants served within the jurisdiction of British Columbia courts. Twenty-one days was not too short a time for defendant to enter an appearance.

■ Thus, defendant was given adequate notice and sufficient time in which to enter an appearance. The question then becomes, did compliance with the British Columbia Rules of the Supreme Court constitute service of process in order to obtain jurisdiction over the parties that is consistent with the public policy of California? The answer must be yes. Order XI, Rule 1(e) provides that the British Columbia courts may issue service of process out of the jurisdiction when the contemplated action involves a breach of contract committed within the jurisdiction. While there is no exactly equivalent statutory basis for service of process in California law, the British Columbia basis is consistent with the California case law interpreting California's long-arm statute. C.C.P. § 410.10. The British Columbia rule is also compatible with the "minimum contacts" test of *International Shoe, supra.*

Indeed, as plaintiff points out, were the situation reversed, with a breach of contract in California and a defendant residing in Canada, there is no doubt that the California courts would assert jurisdiction over the defendant. It is true that defendant did not have an office in British Columbia (a method by which lack of personal jurisdiction may be disregarded in recognizing a foreign judgment under C.C.P. § 1713.-5(a)(5)), but defendant was engaged in business in British Columbia, was a director and shareholder of a company operating in British Columbia, and had signed a contract in British Columbia which specifically related to his other dealings in that Province.

Moreover, Order XI, Rule 1(j) specifically permits service of process where "it appears that plaintiff has a good cause of action against the defendant upon a contract", which was the case here, and where "the defendant has assets within the jurisdiction of the value of $200 at least, which may be rendered liable for the satisfaction of the judgment." Defendant had pledged as security for the contract of guarantee $380,-000 worth of IBM stock which was in Canada.

Defendant argued that there is no reason why this Court should recognize a foreign court's jurisdiction simply because California courts would have exercised jurisdiction in the same fashion if the Bank were a California bank and Kough were a resident of British Columbia. This is because California's interest in claiming jurisdictional power over citizens of other countries does

not require it to allow other jurisdictions to exercise the same power over California's citizens. Furthermore, defendant argues, the Uniform Foreign Money-Judgments Recognition Act specifically lists the circumstances under which foreign jurisdiction will be recognized. Contrary to defendant's claim, however, the Uniform Foreign Money-Judgments Recognition Act does permit courts to recognize other bases of jurisdiction besides those listed in the Act. C.C.P. § 1713.5(b).

The purpose of the Uniform Act was to create greater recognition of the state's judgments in foreign nations. This was to be accomplished by informing the foreign nations of particular situations in which their judgments would definitely be recognized, and thus encourage them to recognize California judgments.[1] The action of this Court in recognizing British Columbia jurisdiction over Kough is consistent with the purpose of the Act. Indeed, the Uniform Law Commissioners address the question of bases of jurisdiction other than those provided by the Act:

"The Act makes clear that a court is privileged to give the judgment of the court of a foreign country greater effect than it is required to do by the provisions of the Act. In codifying what bases for assumption of personal jurisdiction will be recognized, which is an area of the law still in evolution, the Act adopts the policy of listing bases accepted generally today and preserving for the courts the right to recognize still other bases. Because the Act is not selective and applies to judgment from any foreign court, the Act states that judgments rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law shall neither be recognized nor enforced." Uniform Foreign Money-Judgments Recognition Act ("U.L.A."), Commissioners' Prefatory Note.

C.C.P. § 1713.5(b) provides that other bases of jurisdiction may be recognized. The Commissioners comment:

"New bases of jurisdiction have been recognized by courts in recent years. The Act does not codify all these new bases. Subsection (b) [C.C.P. § 1713.5(b)] makes clear that the Act does not prevent the courts in the enacting state from recognizing foreign judgments on bases of jurisdiction not mentioned in the Act."[2]

It is important to point out that this Court would not have recognized the jurisdiction of British Columbia courts over defendant Kough had his contacts with that Province been less pronounced. However, the undisputed facts establish that Kough had a continuing interest in the operation of Arvee Cedar Mills, Ltd., to the extent that he was willing to guarantee the debts of the company. This is not a casual or incidental contact with British Columbia.

California cases support this interpretation.[3] The cases defendant cites in his Closing Points and Authorities, p. 4, are easily distinguishable.

*Boivin v. Talcott,* 102 F.Supp. 979 (N.D. Ohio 1951), involved a foreign service of process statute which only required notice by publication. This was clearly insufficient to give the foreign court personal jurisdiction over the defendant. The British Columbia statute provides for personal service of Notice of Writ of Summons:

"Where service is to be effected in any foreign country to which this Rule may, by order of the Chief Justice of the Supreme Court from time to time, be applied upon anyone other than a British subject, the following procedure shall be adopted:

"(1) The notice of the writ shall be transmitted by the Registrar to the Secretary of State, with a copy thereof translated into the language of the country in which service is to be effected,

---

1. Uniform Foreign Money-Judgments Recognition Act ("U.L.A."), Commissioner's Prefatory Note.

2. U.L.A., *supra,* at n. 1, § 5, Comment.

3. *Julen v. Larson,* 25 Cal.App.3d 325, 101 Cal. Rptr. 796 (1972) (dicta).

with a request for further transmission of the same to the Government of the country in which it is to be served with a request that service, either personal or in such manner as is consistent with the practice and usage of that country when personal service cannot be made, be effected and that return be made showing how such service has been effected." Order XI, Rule 8.

The statute indicates that personal service is the appropriate method in British Columbia.

The second case defendant cites is *Ross v. Ostrander,* 192 Misc. 140, 79 N.Y.S.2d 706 (Sup.Ct.1948). In that case, the English rule permitting service against one breaking a contract in England was not recognized by the New York court as a sufficient basis for personal jurisdiction. However, this decision was questioned in *Plugmay Ltd. v. National Dynamics Corp.,* 48 Misc.2d 913, 266 N.Y.S.2d 240 (Civ.Ct.N.Y.1966), *rev'd on other grounds,* 53 Misc.2d 451, 278 N.Y.S.2d 896, *aff'd,* 28 A.D.2d 645, 282 N.Y.S.2d 172 (N.Y.App.Div.1967), in which the court granted recognition of personal jurisdiction. Although this opinion was reversed as to the granting of summary judgment for the plaintiff, the New York Appellate Division remanded the case for trial to establish whether the facts of the case were sufficient to establish personal jurisdiction in England. In the case at bar, the pleadings before the Court indicate that defendant had sufficient contacts in British Columbia to make the personal jurisdiction effective.

Finally, defendant cites *Davidson & Co., Ltd. v. Allen,* 89 Nev. 126, 508 P.2d 6 (1973), wherein the Nevada Supreme Court held that a Canadian court did not have personal jurisdiction over defendants. However, this case involved a very different set of facts from the case before the Court. A third party had ordered stock for defendant Allen without his knowledge or consent. Allen had no contact whatsoever with Davidson & Co., was not present in Canada, and did not commit acts there giving rise to the causes of action.

In conclusion, the Court finds that the Supreme Court of British Columbia had personal jurisdiction over defendant Kough.

### III

It remains to be considered whether there are other factors which would prevent recognition of the foreign judgment under C.C.P. § 1713.4. Defendant cites C.C.P. § 1713.4(b)(2), (b)(6), and urges that the judgment was obtained by extrinsic fraud and the forum was seriously inconvenient. He argues that while no fraudulent representations were made at the time of judgment, the very nature of the representations made during contract negotiation could be deemed extrinsic fraud as provided for in C.C.P. § 1713.4(b)(2) because Kough did not believe that he was personally liable for more than the value of the IBM stock that he pledged. This led Kough to the conclusion that he need not respond to the litigation. However, the Notice of Concurrent Writ of Summons with which the defendant was personally served specifically states:

> "It was a term of the agreement that the liability thereunder was to be limited to the sum of $718,000 together with interest thereon at the rate of 9¾% per annum from the date of demand for payment of same."

Furthermore, defendant had notice that in his absence, a default judgment would be entered. For these reasons, defendant's averments that he relied on his previous conversations with the Bank's officers concerning the extent of his liability are insufficient to prevent recognition of the judgment on the grounds that it was fraudulently obtained.

Defendant then alleges that the forum was seriously inconvenient, and that therefore the judgment should not be recognized. C.C.P. § 1713.4(b)(6). Defendant points out that it would have been much easier for the Bank to come to California than for him to go to British Columbia. The Bank had litigated a related matter in California. Moreover, defendant alleges that he had insufficient funds to carry on extended liti-

gation in Canada with special counsel, and that a limited number of witnesses were needed to try the one "real issue"—fraud, and that the Bank has offices in California. Defendant believes that traditional notions of fair play and substantial justice would be offended if he were forced to litigate in Canada.

While these points are not without merit, the fact remains that the contract was signed in British Columbia, guaranteeing the debts of a company operating in British Columbia, and the forum is not *seriously* inconvenient. The Uniform Law Commissioners supplied the following comment on the "seriously inconvenient forum" section of the Uniform Foreign Money-Judgments Recognition Act:

"The last ground for the non-recognition under subsection (b) [C.C.P. § 1713.-4(b)(6)] authorizes a court to refuse recognition and enforcement of a judgment rendered in a foreign country on the basis only of personal service when it believes the original action should have been dismissed by the court in the foreign country on grounds of forum non conveniens."[4]

The Supreme Court of British Columbia was clearly not a forum non conveniens.

In summary, the Court can find no reason to deny summary judgment to plaintiff. The British Columbia court had personal jurisdiction, defendant was given notice and the opportunity to appear and defend himself, the judgment was not procured by fraud, and the forum was not seriously inconvenient.

### IV

The final issue to be resolved is whether defendant's counterclaims are res judicata.

 The parties agree that the res judicata effect given the British Columbia judgment sued upon here is to be determined by reference to Canadian laws. *See Estate of Cleland,* 119 Cal.App.2d 18, 20, 258 P.2d 1097, 1098 (1953). Before turning specifically to Canadian law, we note that

the benchmark in the English doctrine of res judicata is *Henderson v. Henderson,* 3 Hare 100 (1843) (Newfoundland), a case brought in England following a decision on a closely related matter by the Supreme Court of Newfoundland. The court held:

"In trying this question I believe I state the rule of the Court correctly when I say that, where a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case. The plea of *res judicata* applies, except in special cases, not only to points upon which the Court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." 3 Hare at 114–115.

The *Henderson* doctrine has been followed by Canadian courts. *E. g., Leutner v. Garbuz* [1971] 1 W.W.R. 436, 441 (Alta. 1970); *Winter v. Dewar & Co.* [1929] 4 D.L.R. 389, 392 (B.C.Ct.App.1929). In *Leutner v. Garbuz, supra,* plaintiff failed to raise the issue of dower rights in the first action wherein the trial court determined defendants were entitled to possession of the land in question. In a second action, the Alberta Supreme Court held that plaintiff's dower rights should have been raised in the original action and could not be raised in the subsequent action:

"[I]f in any Court of competent jurisdiction a decision is reached, a party is estopped from questioning it in a new legal proceeding. But the principle also ex-

---

4. U.L.A., *supra,* at n. 1, § 4, Comment.

tends to any point, whether of assumption or admission, which was in the substance the ratio of and fundamental to the decision." *Leutner v. Garbuz, supra,* 1 W.W.R. at 442, *quoting Hill v. Hill,* [1966] 56 W.W.R. 260, 263 (B.C.Ct.App.) *quoting Hoystead v. Commissioner of Taxation,* [1926] A.C. 155, 170 (Privy Council 1925) (Australia).

▆ In the case at bar, the British Columbia court enforced the contract of guarantee between plaintiff and defendant. Underlying that decision was the assumption that the contract was valid. Thus, counterclaims challenging the validity of the guarantee contract are barred by the British Columbia decision. The Canadian courts have applied the *Henderson* (and *Hoystead*) definition of res judicata to default judgments as well as judgments following adversary litigation on the merits. *Clemons v. Millham,* [1921] 2 W.W.R. 96 (Alta.); *Churchill v. McRae and Cowie,* [1915] 8 W.W.R. 394 (Sask.); *In re South American and Mexican Co. ex parte Bank of England,* [1894] 1 Ch. 37 (Chancery Div. 1893).

The broad *Henderson* rule with respect to default judgments was not followed in *Kok Hoong v. Leong Cheong Kweng Mines, Ltd.,* [1964] 1 All E.R. 300 (Privy Council 1963) (Malaya):

"There is obvious and, indeed, grave danger in permitting such a [default] judgment to preclude the parties from ever reopening before the court on another occasion, perhaps of very different significance, whatever issues can be discerned as having been involved in the judgment so obtained by default." 1 All E.R. at 305.

The case at bar, however, is distinguishable from *Kok Hoong.* In *Kok Hoong,* plaintiff brought an action against defendant for rent on certain equipment and secured a default judgment. Thereafter, plaintiff initiated a second action when the defendant failed to pay rent for a period not covered by the first action. In contrast, the present case involves a judgment duly rendered in British Columbia and this action is simply to enforce that judgment in California. Plaintiff here did not raise new issues of law or fact as occurred in *Kok Hoong.*

With respect to the particular counterclaims raised by defendant, the parties have submitted authorities which suggest that under Canadian law, a counterclaim may be either treated like a defense or like an independent action. If the counterclaim is considered to be an independent action, it will not be barred by final adjudication of the plaintiff's claim.[5]

However, if the counterclaim is in the nature of a defense, similar to a compulsory counterclaim under the Federal Rules of Civil Procedure, it will be barred if not raised in the original action. In making this determination, Canadian and English courts have looked beyond the face of pleadings to see whether the counterclaims are truly independent claims or whether they are actually in the nature of defenses.

For example, in *Girardot v. Welton,* 19 O.P.R. 162 (1900), the Ontario court went beyond the pleadings to determine whether defendant had pleaded counterclaims or defenses. The court explained:

"The counterclaim of a defendant properly so-called is a claim by the defendant for a relief which cannot be obtained by him in the action which is brought against him, and in order to obtain which he must resort to a cross or independent action, and such cross or independent action, when set up by him to the action brought against him, is a counterclaim properly so called; but, if the defendant's

---

5. Marginal Rule 199 of the British Columbia Supreme Court Rules, 1961, reads as follows:

"3. Subject to the provisions of Rule 15 of Order XXI, a defendant in an action may set off, or set up by way of counterclaim against the claims of the plaintiff, any right or claim, whether such set-off or counterclaim sound in damages or not, and such set-off or coun-

terclaim shall have the same effect as a cross-action so as to enable the Court to pronounce a final judgment in the same action, both on the original and on the cross-claim".

Note that "cross-action," under Canadian law, generally means a claim against the plaintiff, not a claim against a co-party.

claim for relief is obtainable in the action brought against him, it is not a counterclaim properly so-called, and is not properly pleadable as such."

■ Defendant's basic contention with respect to the res judicata effect of the British Columbia default judgment is that the counterclaims asserted by him are independent actions and therefore are not barred under the doctrine of res judicata.

The first counterclaim alleges that the Bank misrepresented to defendant the nature of the guarantee contract with respect to the amount guaranteed, the extent of his liability, extension of long-term financing to Arvee Cedar Mills, Ltd., and the extension of loans to Arvee without his knowledge; defendant therefore charges willful and malicious fraud and asks for $500,000 in punitive damages.

This claim essentially urges that the contract of guarantee is invalid because it was obtained by fraud. Thus, the counterclaim is more in the nature of a defense than an independent action. English and Canadian courts have held that claims attacking the validity of a contract are res judicata once the contract has been enforced. For example, in *Bank of Australasia v. Nias,* [1851] 16 Q.B. 1055, 1062–1063, defendant had entered an appearance in a breach of contract case, but had not raised the defense that the contract was obtained by "fraud and covin." Thereafter, defendant tried to raise this defense in a separate action in England. The court held that the defenses of fraud and covin should have been raised in the original action in Australia and could not be raised thereafter. 16 Q.B. at 1063. *See also Williams and Sears v. Richards,* [1917] 25 B.C.R. 19 (Ct.App.).

Defendant argues that any claim raised by him in the form of a counterclaim "is viewed as a cross-action and as such stands alone and does not depend on the disposition of the Plaintiff's action." Defendant's Additional Memorandum at 2, *citing Dominion Trust Co. v. Brydges,* 2 W.W.R. 952 (B.C.1920). That case holds:

"From the facts of this case the counterclaim is used 'as a shield not as a sword'

or in other words it is used as a defence and it therefore is not necessary first to obtain leave [to commence or proceed with the counterclaim]." 2 W.W.R. at 953.

Contrary to defendant's position, *Dominion Trust* teaches that a claim may be pleaded as a counterclaim but still be treated as a defense if it is substantively a defense.

In further support of his contention that a claim pleaded as a counterclaim stands alone and does not depend on the disposition of plaintiff's action, defendant also cites *Victoria and Saanich Motor Transportation Co. v. Wood Motor Co.,* 21 B.C.R. 515 (Ct.App.1915). In that case, the court permitted the defendant's claim to proceed as a counterclaim because it was so pleaded by defendant:

"Defendant has made its election to proceed in that way and I am, therefore, entitled to treat this litigation as claim and counterclaim." 21 B.C.R. at 522.

Nevertheless, the British Columbia courts have gone beyond the pleadings to determine whether a counterclaim is really a counterclaim. In light of the fact that *Dominion Trust Co. v. Brydges,* 2 W.W.R. 952 (B.C.1920), was decided more recently than *Victoria and Saanich Motor Transportation Co. v. Wood Motor Co., supra,* this Court must follow the more recent decision.

Moreover, the general policy discussed above emanating from *Henderson v. Henderson* and *Hoystead v. Commissioner of Taxation* does not permit re-litigation of issues which were fundamental to the decision. In the instant case, recognition of the validity of the contract of guarantee was fundamental to the decision to enforce it.

For these reasons, the first counterclaim, and the second counterclaim alleging nondisclosure and misrepresentation of facts inducing defendant to enter into the contract of guarantee are dismissed as res judicata.

■ The third counterclaim alleges intentional interference with an existing contractual relationship and intentional interference with prospective economic advan-

tage. Defendant alleges that plaintiff entered into a debenture arrangement with Arvee Cedar Mills, Ltd., on November 13, 1973, which gave plaintiff security providing for a fixed and floating charge for the assets of Arvee. Arvee agreed thereby that plaintiff's loans to it were secured by all corporate assets. After receiving the debenture, plaintiff declared the debt to be in default and appointed a receiver/manager for Arvee. Defendant alleges the debenture was obtained by coercion of shareholders and directors "with the intent and purpose of not allowing Defendant to be aware of its execution, and with the intent to foreclose upon it immediately upon obtaining the same so as to gain management power in Arvee Cedar Mills, Ltd., so as to destroy and otherwise injure and interfere with that business."

Under *Henderson,* the third counterclaim is barred as a claim which might have been raised in the British Columbia action. Moreover, under *Hoystead,* the counterclaim is also barred as a substantive issue which was fundamental to the court's decision. Defendant's basic contention is that but for alleged tortious activity on the part of plaintiff, defendant would not now be liable for $842,270.75 or be in court or have lost his IBM stock, because defendant would not have been called upon to fulfill his guarantee obligation had the company been properly managed, *i. e.,* not managed by the Bank.

Relief requested by defendant supports this interpretation of the third counterclaim. Consequently, defendant raises a threshold issue regarding plaintiff's legal right to enforce the agreement. This issue is now res judicata.

The fourth counterclaim requests an "offset" of the value of the stock pledged as security for the guarantee; under the above-cited authority, the claim is a defense which is now res judicata.

Accordingly, IT IS HEREBY ORDERED that plaintiff Bank of Montreal's motion for summary judgment on the British Columbia judgment be granted, and that that judgment in the amount of eight hundred forty-two thousand two hundred seventy and seventy-five hundredths dollars ($842,270.75) be recognized.

IT IS HEREBY FURTHER ORDERED that defendant Kough's motion for summary judgment is denied and that his counterclaims are dismissed as res judicata.

IT IS HEREBY FURTHER ORDERED that counsel for plaintiff shall promptly prepare an appropriate form of judgment, obtain approval of counsel for defendant as to form, and submit it to the Court for execution.