**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL PAUL SMITH,
individually and as Trustee of the
Mark David Smith Foundation; THE
GAVIN MICHAEL SMITH TRUST;
THE MARK DAVID SMITH TRUST;
THE PRIVATE TRUST,

    Plaintiffs-Appellants,

    v.

THE TORONTO-DOMINION BANK,
a Chartered Bank of the Dominion of
Canada,

    Defendant-Appellee.

No. 98-4008
(D.C. No. 96-CV-263)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **BARRETT**, and **MURPHY**, Circuit Judges.

Plaintiffs Michael Paul Smith, the Mark David Smith Foundation, the

Gavin Michael Smith Trust, the Mark David Smith Trust, and the Private Trust

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

appeal the district court's dismissal of their wrongful foreclosure action against defendant Toronto-Dominion Bank. In this diversity action appeal, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Smith, who is trustee, established the Foundation and Trusts on behalf of his sons, Gavin Michael Smith and Mark David Smith. Smith is also manager of First Heritage Financial Corporation, whose stock is owned entirely by the Foundation and Trusts.

Smith formerly owned two pieces of Canadian real estate that are relevant here: a house (Maple Street property) used as his personal residence until at least April 1995 [1]; and a condominium rental unit (Front Street property) used by Smith as an investment. Both properties were mortgaged to defendant, a federally chartered bank of the Dominion of Canada.

Defendant filed suit against Smith in the Ontario Court of Justice on December 14, 1994, for delinquent payments on the mortgage on the Front Street property. Smith did not answer and default judgment was entered against him. Smith moved to set aside the default judgment, but the motion was denied.

---

[1] The complaint alleged the Maple Street property was owned by the Foundation and Trusts through First Heritage. In granting summary judgment in favor of defendant, the district court concluded the evidence was uncontroverted that the property was titled in Smith's name alone. We have reviewed the record on appeal and agree with the district court.

Defendant filed suit against Smith in the Ontario Court of Justice on May 23, 1995, for delinquent payments on the mortgage on the Maple Street property. Smith filed a statement of defense and counterclaim. Summary judgment was granted in favor of defendant and Smith's counterclaim was dismissed. The court subsequently denied Smith's motion to set aside the summary judgment, holding such a motion was not permitted and Smith had failed to appeal within the appropriate time limit.

Smith filed this diversity action on behalf of himself and the Foundation and Trusts on March 22, 1996. Smith alleged he was "a citizen of the state of Utah, residing in Salt Lake City, Utah." App. at 2. He alleged various causes of action (e.g., negligence, breach of contract, breach of fiduciary duty, "slander of credit") arising from what he described as defendant's wrongful foreclosure of the mortgages on the Front Street and Maple Street properties.

Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "based on the doctrines of res judicata and collateral estoppel in prior proceedings arising out of the same transactions and occurrences." Id. at 17. More specifically, defendant contended the foreclosure judgments precluded plaintiffs from asserting their causes of action, all of which could have been asserted as defenses or counterclaims in the Canadian proceedings. The district court heard arguments on the motion and notified the parties the motion would be treated as a motion for

summary judgment. The parties were given three months to conduct discovery and were directed to file supplemental briefs addressing whether Smith received a full and fair opportunity to be heard in the two Canadian foreclosure proceedings. In granting summary judgment in favor of defendant, the district court held "that Mr. Smith was given a full and fair opportunity to participate in both the Front Street property and the Maple Street property suits," and that "[a]pplication of the doctrines of res judicata and collateral estoppel [wa]s appropriate." Id. at 719. Plaintiffs' motion to alter or amend judgment was denied.

II.

Before addressing the specific issues raised by plaintiff, we begin with the more general question of whether any Canadian judgment would be entitled to extraterritorial effect in this action. In a federal diversity action, the law of the state in which the district court sits, rather than federal law, "'governs the effect to be given foreign judgments.'" Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 359 (10th Cir. 1996) (quoting Robert Casad, Issue Preclusion and Foreign Country Judgments: Whose Law?, 70 Iowa L. Rev. 53, 78 (1984)). Thus, the question here is whether Utah law would recognize a judgment rendered by a Canadian court.

To date, no Utah court has been called upon to recognize a Canadian judgment; nor has the Utah legislature adopted the Uniform Foreign Money

-4-

Judgments Recognition Act.  See generally  Phillips , 77 F.3d at 359.  However, the

Utah Supreme Court has indicated that, absent a controlling statute or treaty,

foreign country judgments can be enforced in the Utah courts "under principles of

comity."  Mori v. Mori , 931 P.2d 854, 856 (Utah 1997) (citing    Hilton v. Guyot ,

159 U.S. 113 (1895)).  The principles of comity require recognition of a foreign

judgment if

> there has been opportunity for a full and fair trial abroad before a
> court of competent jurisdiction, conducting the trial upon regular
> proceedings, after due citation or voluntary appearance of the
> defendant, and under a system of jurisprudence likely to secure an
> impartial administration of justice between the citizens of its own
> country and those of other countries, and there is nothing to show
> either prejudice in the court, or in the system of laws under which it
> was sitting, or fraud in procuring the judgment.

Hilton , 159 U.S. at 202.

Given the Utah Supreme Court's statements in    Mori , as well as the long

history of other courts recognizing Canadian judgments under principles of

comity,  see, e.g., Ritchie v. McMullen  , 159 U.S. 235, 240-43 (1895) (Canadian

judgment enforced in federal diversity action filed in Illinois);      Clarkson Co. v.

Shaheen , 544 F.2d 624, 630 (2d Cir. 1976) (Canadian judgment recognized as one

from "a sister common law jurisdiction with procedures akin to our own");

Harrison v. Triplex Gold Mines   , 33 F.2d 667, 672-73 (1st Cir. 1929) (affirming

dismissal of action seeking to enjoin defendants from enforcing a Canadian

judgment), we find it reasonable to believe the Utah courts would likewise

-5-

recognize a Canadian judgment if that judgment satisfied the requirements outlined in  Hilton  and otherwise comported with Canadian law.  [2]  See generally Phillips , 77 F.3d at 350 (predicting Kansas courts would recognize valid Australian judgment).

### III.

Plaintiffs contend the district court erred in recognizing the two Canadian judgments for collateral estoppel purposes because plaintiffs did not have a full and fair opportunity to contest either of the underlying foreclosure actions. With respect to the Front Street property, plaintiffs argue the court erred in concluding defendant made a bona fide attempt to effect personal service of the action upon Smith. With respect to the Maple Street property, plaintiffs argue Smith did not receive adequate notice of the summary judgment hearing.

The only  Hilton  requirement challenged by plaintiffs was whether Smith received adequate notice and an opportunity to defend in each of the Canadian foreclosure proceedings. Accordingly, we proceed to review that narrow issue in the context of each foreclosure proceeding. To satisfy the due process clause of

---

[2] Generally speaking, Utah law provides that questions regarding the validity of a foreign judgment "should be tested by the law of the jurisdiction where the judgment was rendered." Rocky Mtn. Claim Staking v. Frandsen , 884 P.2d 1299, 1300-01 (Utah App. 1994). If a judgment does not comport with the laws of the foreign jurisdiction where it was rendered, it will not be considered valid for purposes of recognition under Utah law. See Matter of Estate of Jones , 858 P.2d 983, 985 (Utah 1993).

the Constitution, [3] "notice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). When the name and address of an interested party are reasonably ascertainable, due process requires that the party be given "[n]otice by mail or other means as certain to ensure actual notice." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983). "Due process does not require, however, that the interested party actually receive notice." United States v. 51 Pieces of Real Property, 17 F.3d 1306, 1316 (10th Cir. 1994). As long as the party attempting service "'acted reasonably in selecting means likely to inform [the] persons affected, . . . then it has discharged its burden.'" Id. (quoting Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988)).

We review de novo due process issues that call for legal conclusions. See

---

[3] We agree with the district court that the Hilton requirements are properly assessed in light of our own constitutional notions of due process. See, e.g., Koster v. Automark Indus., Inc., 640 F.2d 77, 79 (7th Cir. 1981) (Dutch default judgment could not be enforced in federal district court because defendant's business contacts with the Netherlands were insufficient to reach minimal level needed to satisfy constitutional due process requirements); Bank of Montreal v. Kough, 430 F. Supp. 1243, 1247 (N.D. Cal. 1977) (Canadian court's personal jurisdiction over defendant must have been, "at a minimum, in compliance with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution"), aff'd, 612 F.2d 467 (9th Cir. 1980).

United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996). Whether the means used to give notice were reasonably calculated to provide actual notice is a factual determination typically reviewed by this court for clear error. See id. However, because the district court's rulings in this case occurred in the context of granting defendant's motion for summary judgment, we must examine the factual record and reasonable inferences therefrom in the light most favorable to plaintiffs, who were opposing the motion for summary judgment. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if there is no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Front Street property**

Approximately two weeks after defendant filed suit against Smith in the Ontario Court of Justice for delinquent payments on the Front Street property mortgage, Smith filed a pro se action against the tenants of the property, claiming they were in arrears on rental payments. On his notice of application and affidavit of service, Smith indicated his address for return service was "P.O. Box 203, Rosseau." App. at 471, 473. On March 3, 1995, defendant, through process server Paul William Comission, attempted to personally serve its Statement of Claim on Smith at his residence at the Maple Street property. The process server

was informed that Smith did not reside there and had not resided there in the past. On March 10, 1995, defendant, again through the process server, attempted, without success, to personally serve Smith at a job site. According to the process server, he had previously attempted to serve Smith with a construction lien at the job site address.

Having failed to personally serve Smith, defendant moved the Ontario Court of Justice to have Smith served by substituted service in accordance with Rule 16.04 of the Rules of Civil Procedure for Ontario. See App. at 459 (outlining purpose of Rule 16.04). In support of its motion, the Bank submitted the affidavit of the process server, as well as an affidavit from one of defendant's attorneys, indicating Smith had listed his address as P.O. Box 203, Rosseau, in his action against his tenants. The court granted the motion and ordered that service upon Smith be accomplished by mailing the Statement of Claim, along with a copy of the court's order granting substituted service, by prepaid registered mail and prepaid first class mail to Smith at P.O. Box 203, Rosseau, Ontario. Defendant complied with the court's order regarding substituted service. Notwithstanding the attempt at substituted service, Smith failed to answer and default judgment was entered against him.

According to Smith, he "never received the substituted service by registered mail." App. at 153 (he alleges that copy was returned to defendant in

May 1995). However, he does not deny he used P.O. Box 203 as a mailing address, nor does he deny receiving the copy of the Statement of Claim sent by first class mail.

Given these uncontroverted facts, we conclude defendant's efforts at substituted service were sufficient to satisfy the requirements of constitutional due process.[4] Indeed, mailing the Statement of Claim to Smith at his post office box was an entirely reasonable step in light of his absence from his Maple Street residence (which he has admitted) and his use of the post office box for purposes of service in his ongoing case against the tenants of the Front Street Property. See Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490 (1988) (generally, mailing notice to a party's last known address is "reasonably calculated" to provide actual notice); Campbell v. Bartlett, 975 F.2d 1569, 1575 (10th Cir. 1992) (posting substituted service at out-of-state truck driver's sister's house satisfied requirements of due process).

Plaintiffs ask us to conclude substituted service was not warranted due to what is described as the process server's incompetence in effecting personal service on Smith. This argument misses the point. We are not here to review the

---

[4] The fact the judgment was entered by default does not prevent us from recognizing it. See, e.g., Canadian Imperial Bank of Commerce v. Saxony Carpets Co., 899 F.Supp. 1248, 1254 (S.D.N.Y. 1995) ("Absent a clear showing of fraud, a foreign default judgment is as conclusive an adjudication as a contested judgment."), aff'd, 104 F.3d 352 (2d Cir. 1996).

propriety of the Canadian court's decision to allow substituted service. Rather, as outlined above, our narrow task is to determine whether the service that actually occurred was constitutionally sufficient to render the resulting judgment valid for purposes of recognition in this case.

**Maple Street property**

In the action against Smith for delinquent payments on the Maple Street property mortgage, Smith was personally served with a copy of the Statement of Claim on June 20, 1995. On July 20, 1995, he filed a statement of defense and counterclaim. The statement of defense indicated Smith was not represented by counsel and stated his address was P.O. Box 203, Rosseau (the same address where copies of the Front Street Property complaint were sent). In accordance with Rule 16.01(4) of the Ontario Rules of Civil Procedure, defendant mailed copies of its subsequent pleadings, including its motion for summary judgment, to Smith at his P.O. Box 203 address. Defendant's motion for summary judgment was initially heard by the Ontario Court of Justice on October 16, 1995, and a supplemental hearing was held on October 30, 1995. Although the court concluded Smith had been properly served with notice of the hearings, he failed to appear. On October 30, 1995, the court granted summary judgment in favor of the Bank. Although Smith, through counsel, subsequently moved to have the

judgment set aside, that motion was denied, and Smith apparently chose not to appeal the court's decision.

Plaintiffs now contend the judgment entered against Smith in the Maple Street property proceeding should not be recognized because he was not given proper notice of the summary judgment hearing. We reject this contention as meritless. Smith presented this precise lack of notice argument to the Canadian court that rendered the judgment against him, and that court found he <u>was</u> properly served with notice of the summary judgment hearing. Plaintiffs have cited no cases, and we have found none, that would allow them to now challenge that factual conclusion (and thereby effectively obtain collateral review of the Canadian ruling). In any event, we are not convinced that lack of notice of a motion hearing is a sufficient basis for refusing to recognize a foreign judgment, where, as here, the party against whom the judgment was entered otherwise had notice of the suit and an opportunity to defend.

IV.

Plaintiffs offer no reason why the two Canadian judgments, which decided the parties' rights concerning the two underlying mortgages, should be denied recognition in this case. Further, although there is a limited discussion in plaintiffs' opening appellate brief concerning collateral estoppel, plaintiffs have not specifically challenged the fact that the Canadian judgments, if properly

recognized in this court, collaterally stop Smith from asserting his claims against defendant.[5]

As a final matter, we note plaintiffs failed to produce any evidence indicating the Foundation and Trusts had any interest in the Maple Street property mortgage. Thus, to the extent the complaint asserted claims on behalf of the Foundation and Trusts arising out of the foreclosure of that mortgage, those claims were properly dismissed.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[5] It is unclear whether the preclusive effect of the Canadian judgments is to be determined by Utah law or Canadian law. See Casad, supra, at 56-57 (noting some courts have determined the preclusive effect of a foreign judgment by reference to standards of rendering country, while others have concluded such judgments should be accorded the same res judicata effects as domestic judgments). Ultimately, we find it unnecessary to decide which applies because both result in preclusion of the claims asserted by Smith. See In re T.J., 945 P.2d 158, 162 (Utah App. 1997) (outlining three elements necessary for application of claim preclusion); Robertson v. Gamble, 1997 Ont.C.J. Lexis 759 at *10 (1997) ("Cause of action estoppel applies not only to points on which the court has pronounced but to every point which properly belonged to the subject of the litigation.").