NICHOLS, Senior Circuit Judge.
These consolidated appeals seek our review of a judgment of the Claims Court, unreported, which grants defendant’s motion for summary judgment and dismisses both cases. While we cannot agree with all the reasoning of the Claims Court, as delivered orally from the bench, we conclude that the court reached the right result, and therefore we affirm.

Facts

Arrowhead Timber Company (Arrowhead) entered into a contract with the Forest Service, United States Government, to cut and remove timber in Mt. Hood National Forest. It was referred to as the “Ca-mas” sale and was one of several between the same parties. By such a contract, the contractor is to cut and remove the designated timber, which becomes its property to process or resell, and is to make payments at rates agreed upon. To secure its performance, the contractor makes advance deposits and besides is required to furnish a surety company performance bond. Employers Mutual Liability Insurance Company of Wisconsin * (Employers) posted its bond in the final sum of $139,000, conditioned upon proper performance by Arrowhead. Arrowhead commenced to cut timber in May 1975, but in August 1975, the Forest Service suspended operation because of failure to make all the required payments. In August 1975 it made its first demand upon Employers. Arrowhead was notified it was in breach, and on December 2, 1975, that the contract was cancelled.
On December 31, 1975, the government sued Arrowhead, other timber companies, and Employers in the United States District Court for the District of Oregon on account of various breaches, and claiming money damages of $595,928 as well as *1574 foreclosure of timber that had been cut and was still in defendant’s possession. This suit related only to timber actually cut. Employers counterclaimed, but Arrowhead did not. On October 6, 1976, the suit was dismissed with prejudice upon stipulation that it had been settled.
By June 26, 1976, the Forest Service had resold the uncut timber realizing a loss apparently additional to the one already sued on and not covered in the settlement of the suit. Efforts to collect this continued after the settlement and only on November 5, 1981, did the Forest Service make a formal demand upon Employers in the amount of $139,000, stating, however, that the full loss on the uncut timber was $144,678.51. The Service said:
If we do not receive payment or a reasonable explanation for a delay in payment by November 20, 1981, we will ask our Office of General Counsel to request the Treasury Department to remove the name of Employers Insurance of Wausau from their Circular 570, the list of approved sureties for Government contracts. * * *
Interest charges at 1.53 percent per month were also threatened.
Employers responded on November 9 with a check for $139,000 marked—
Full and final settlement of all claims under bond for Arrowhead Timber Company for the Camas Timber Sale, contract 03313-8 * * *.
The Service notified the United States Attorney recommending he not file a complaint seeking recovery of the remaining $5,678.51 of the government claim, and this apparently ended government collection efforts relating to the Camas tract.
The collapse of Employers’ resistance is explained by it as due to duress from the threat to remove Employers from the approved list. It says it was vulnerable to this threat because of an effort by a “hearing officer” in another case that was pending at the same time to have Employers so removed, an effort only defeated three weeks after the check was mailed.
On November 20 Arrowhead demanded that the Forest Service return the $139,000 check to Employers, but on December 11 the Service responded that the payment was made
by surety without protest. We have accepted the amount of $139,000 in full and final settlement of all damages under the Camas II Timber sale, contract No. 03313-8 between the Mt. Hood National Forest and Arrowhead Timber Company.
We consider this matter closed and have, accordingly, closed our case file.
On September 22, 1982, Arrowhead and Employers jointly filed their present suit in the Court of Claims, and it became part of the case load of the Claims Court on its commencing legal existence the first of the following month. Arrowhead claimed $1,168,122.37 and Employers $139,000. They sought to recover the November 5, 1981, payment as having been made under duress. It was alleged the June 1976 resale was improperly conducted and failed to realize the amount it should have. Arrowhead contended that it had denied any liability to the Forest Service and had instructed Employers not to pay unless sued.
Cross-motions for summary judgment were filed and the court, Honorable Robert Mayer, heard oral argument at the end of which he delivered his conclusions orally from the bench. Though recognizing that the entire liability was not covered by the bond, he took the view that Employers tendered, and the government accepted, the $139,000 payment in full settlement of the entire case as an “accord and satisfaction”: claims of and against Arrowhead along with Employers. As to authority in Employers to act for and bind Arrowhead, the judge discovered it in the fact that during the negotiation between Arrowhead and the government, Employers was kept informed by copies of correspondence. He said there was “apparent authority,” but did not mention, and there is not in the record, anything to reflect any express understanding that Employers should act for Arrowhead. He further ruled there was no mistake to warrant a recission, nor was there duress under the law. This would suffice to dispose of the cases of *1575 both plaintiffs, but for completeness he ruled that Arrowhead was also barred either by res judicata or the statute of limitations: the former if it should have asserted its claims in the Oregon suit as compulsory counterclaims: the latter if the counterclaims were not compulsory. In the latter event, more than 6 years had elapsed from accrual of the claims to filing of the petition, and nothing had happened to toll the statute, 28 U.S.C. § 2501.

Discussion

It appears to us that our discussion of the appeal issues in this case should fall under three heads, whether: (1) Employers acted as agent for Arrowhead and bound Arrowhead by tendering its $139,000 check in “full and final settlement” of the “claims under bond”; (2) Employers can recover the $139,000 as exacted from it by duress, and (3) Arrowhead is barred from prosecuting its claims by the statute of limitations or res judicata. We have considered other issues, but deem them not worth discussion. The appellants have briefed to some extent their liabilities to one another, but nothing we say or do is intended to pass on that question, which is in no way before us.
I
Employers did not purport to act for Arrowhead in offering its $139,000 check in settlement, and did not do so in fact or in law. It said expressly on the check it was tendered “in full and final settlement of all claims under bond,” not all claims under the contract. Not only is there no evidence of any express appointment of Employers as Arrowhead’s agent, but also all the facts and circumstances militate against any implied appointment.
A. Arrowhead had acted for itself in all previous negotiations, merely furnishing Employers information copies of correspondence.
B. Arrowhead’s pecuniary involvement was far larger than Employers’. If Employers could settle the entire case, the tail would wag the dog.
C. The interests of the two conflicted. Employers’ motives in settling were peculiar to itself and not shared by Arrowhead. They were [Employers’] desire to remain on the approved sureties list and no doubt the rate of interest, stated by the government in its demand to be running currently at 18 percent.
D. Arrowhead repudiated the supposed settlement as soon as it learned of it.
If the agency is implied in fact or in law or some combination of fact and law, no authority is cited to support this novel and unreasonable result, by which the claim of Arrowhead is sacrificed to keep Employers on the approved sureties list. The essence of an agency relationship is that the agent is to act for the benefit of the principal. General Building Contractors Association v. Pennsylvania, 458 U.S. 375, 391-394, 102 S.Ct. 3141, 3150-3151, 73 L.Ed.2d 835 (1982). Employers was on the bond for the benefit of Arrowhead’s adversary party, the United States, as the letter of November 5, 1981, rather sharply reminded it. The court below cited Great American Insurance Co. v. United States, 481 F.2d 1298, 1311, 202 Ct.Cl. 532 (1973), for its discussion of “apparent authority” in wholly unlike circumstances. That opinion also includes an interesting discussion of the rights of a surety when it advances funds to complete a contract when its principal has defaulted, not at all the case here.
II
Employers cannot recover a payment it tendered “in full and final settlement” when no duress is shown. The Supreme Court established the basic rule for the Court of Claims under the Tucker Act. A “voluntary” payment in response to an illegal demand is not recoverable unless notice was given in a suitable protest, or the Congress has waived the protest requirement, as it has done, e.g., in the case of exactions by the Internal Revenue Service. United States v. Edmondston, 181 U.S. 500, 21 S.Ct. 718, 45 L.Ed. 971 (1901). A payment under duress can be recovered as it is not considered voluntary if made because of the wrongful acts or threats of the payee government. Urban Plumbing & Heating Co. v. United States, 408 F.2d *1576 382, 389-92, 187 Ct.Cl. 15 (1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970). However, the requirements to establish duress are exacting. Three elements must be found:
(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.
Fruhauf Southwest Garment Co. v. United States, 111 F.Supp. 945,126 Ct.Cl. 51, 62 (1953)
See also Systems Technology Associates, Inc. v. United States, 699 F.2d 1383, 1387 (Fed.Cir.1983). Here the circumstances clearly permitted other alternatives. The surety could have requested delay and there is nothing to show that still unsettled liability issues would not have been considered a good reason, especially with such an advantageous interest rate running. The threat was only to recommend de-listing through normal channels, and there is nothing to show the officials involved would have delisted Employers unless to do so was warranted. Employers said it was frightened by threats in another case, but there is nothing to show the official who signed our threatening letter even knew about that. Surety companies are experienced in dealing with government, financially strong, and not easily pushed around. Particularly with such a company, a statement of intention to seek a remedy the law gives is not duress. Fidelity & Casualty Co. v. United States, 490 F.2d 960, 966, 203 Ct.Cl. 486 (1974).
The $139,000 check may have been precipitately issued and mailed, but it was not the product of duress as duress is understood in this court. Therefore, the check did exactly what it purported to do. It settled the liabilities of Employers under the bond, and Employers cannot litigate any of them now.
Ill
The government argues, correctly we believe, that if the claim of Arrowhead here asserted had been a compulsory counterclaim under Fed.R.Civ.P. 13(a), in the Oregon case, not having been pleaded, it was barred by res judicata. If it was only a permissive counterclaim, it was not barred by res judicata, but in that event, the statute of limitations has run under 28 U.S.C. § 2501, which provides a 6-year period.
The institution of a plaintiffs suit suspends the running of limitations on a compulsory counterclaim while the suit is pending. Burlington Industries, Inc. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir.1982). Here Arrowhead’s cause of action would seem to have accrued, not later than December 2, 1975, when the government cancelled the contract for breach, or June 1976, when it resold the uncut timber, but Arrowhead itself says it accrued September 9, 1975, on defendant’s notice of breach. The suit was filed September 22, 1982, more than 6 years later. But the Oregon suit was pending only from December 31, 1975, when it was filed, to October 6, 1976, when it was dismissed on stipulation. It does not seem as if the tolling period was quite long enough. If, however, it was, the failure to assert a compulsory counterclaim precludes subsequent federal litigation of that claim. Bank of Montreal v. Kough, 612 F.2d 467 (9th Cir. 1980). On the other hand, a permissive counterclaim does not generate a like tolling period. Erie Basin Metal Products, Inc. v. United States, 150 F.Supp. 561, 138 Ct.Cl. 67, 71 (1957). A compulsory counterclaim is by Rule 13(a) one arising “out of the transaction or occurrence that is the subject matter of the opposing party’s claim * * * ” and a permissive counterclaim is any other. See, e.g., Moore-McCormack Lines, Inc. v. United States, 175 Ct.Cl. 496, 503 (1966).
Here, the government claim in the Oregon suit and Arrowhead’s hypothetical counterclaim would have arisen out of the same contract. It does not necessarily follow they arose out of the same transaction or occurrence. The Oregon suit had accrued when it was filed and was to recover either the trees removed from the tract themselves, or the contract payment for *1577 removing them. The other claim, mostly recovered from Employers, was for the trees not removed though sold under the contract. This claim had not accrued until the trees were resold to others and the deficiency thus established. This occurred June 1976. The parties treated these two claims as not so closely related: thus, the government was negotiating with Arrowhead to agree if possible on the amount of the second claim, while it was stipulating that the first or Oregon suit claim had been settled in full. Arrowhead’s claim sued for on September 22, 1982, was for improper conduct of the resale of June 1976, for refund of the $139,000 allegedly paid under duress by Employers, and for damages of $1,000,000 apparently for generalized injury to Arrowhead’s business and loss of anticipated profits. It seemingly had not wholly accrued when the Oregon suit was filed and may not have accrued at all.
On the whole, we conclude that there is no claim preclusion rising out of the failure of Arrowhead to counterclaim in the Oregon suit and, as a consequence, nothing happened to toll the running of limitations and the statute had run on Arrowhead’s entire claim. An exception to this is the claim that $139,000 was exacted by duress, apparently stated by Arrowhead only on the theory, which Arrowhead opposed and argued against, that Employers paid as Arrowhead’s agent. It is clear that the $139,000 claim was not barred by limitations, and so the court had jurisdiction of it, but it was plainly without merit and rightly rejected on other than limitations grounds. Defendant filed a counterclaim, but limitations had long since run upon it and it could only have been considered as an offset to appellants’ claims.

Conclusion

In accordance with the foregoing discussion, the decision of the Claims Court, though erroneous in some of its reasoning, was right as to result and is therefore affirmed.
AFFIRMED.

So called in the bond. The discrepancy with the appellant's name here is not explained, and apparently is not of moment,