BANK OF MONTREAL, a Foreign Corporation, Plaintiff/Appellee,

v.

Jack KOUGH, aka John Keller Kough, Defendant/Appellant.

No. 77–3233.

United States Court of Appeals, Ninth Circuit.

Jan. 29, 1980.

J. Robert Foster, Rusconi, Foster & Thomas, Morgan Hill, Cal., on brief; Dr. Jack Kough, pro se, for defendant/appellant.

Arthur A. Park, Jr., Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., on brief; Frank D. Tatum, Jr., San Francisco, Cal., for plaintiff/appellee.

Before BROWNING and GOODWIN, Circuit Judges, and BARTELS,* District Judge.

BARTELS, District Judge:

Jack Kough ("Kough") appeals from a judgment of the United States District Court for the Northern District of California, Renfrew, J., recognizing and enforcing a money judgment obtained against him by default in British Columbia by the Bank of Montreal (the "Bank"), and dismissing his counterclaims as *res judicata.* He contends that the District Court erred in: (1) determining that the personal jurisdiction requirements of California Code of Civil Procedure ("CCP") §§ 1713 *et seq.* for the enforcement of a foreign money judgment were satisfied by his contacts with British Columbia; and (2) dismissing his counterclaims as *res judicata.* We affirm.

I

Kough was a minority shareholder (49%) of Arvee Cedar Mills, Ltd. ("Arvee"), a British Columbia corporation situated and doing business in that province. He was also an officer and member of the Board of Directors of Arvee, which did business with the Bank of Montreal, a foreign corporation. On August 8, 1973, Kough, with one Merlin William Thompson entered into a guarantee agreement, executed in British Columbia after several meetings of negotiation in the province, whereby he and Thompson agreed to guarantee the payment of all present and future debts of Arvee to the extent of $718,000 plus interest from date of demand for payment, in consideration of the Bank's agreement to continue to do business with Arvee. Arvee defaulted and Kough defaulted.

Accordingly, the Bank, on August 14, 1975, brought an action against Kough in

---

* The Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

the Supreme Court of British Columbia for breach of contract, alleging that there was due and owing $769,000 from Arvee, and that defendant Kough, as well as Thompson, as signatories to the guarantee contract, were jointly and severally liable for $842,000. Kough was personally served on November 23, 1975 in Morgan Hill, California with a Summons and Notice of Concurrent Writ of Summons from the Supreme Court of British Columbia, informing him of the claims against him and instructing him to enter an appearance within 21 days or face a possible default judgment. Kough did not appear in the British Columbia action and a default judgment was entered against him on January 16, 1976, in the amount of $842,278.75.

Thereafter, the Bank commenced an action for a foreign money judgment against Kough in the United States District Court for the Northern District of California, seeking the full amount of the British Columbia judgment plus 5% interest from the date of the judgment. On July 30, 1976, Kough filed an answer in which he denied that the Canadian judgment was duly rendered, claiming that he neither appeared nor was served with the original process or

summons in British Columbia. He also alleged that the complaint failed to state a claim upon which relief could be granted and raised a number of affirmative defenses going to the merits of the underlying default judgment.[1]

To his defenses, appellant added four counterclaims: the first two alleged misrepresentation as to the nature of the guarantee and fraud in its inducement; the third alleged intentional interference with an existing contractual relationship and prospective economic advantage of Arvee by the Bank, resulting in Arvee's default and Kough's consequent liability on his guarantee; and the fourth claimed an offset of the value of some 1200 shares of IBM stock pledged by appellant to the Bank as security for the guarantee.[2]

## II

Recognition and enforcement of the British Columbia judgment in this case depends upon the proper construction of the Uniform Foreign Money Judgments Recognition Act (the "Uniform Act" or the "Act"), adopted by California as California Code of Civil Procedure ("CCP") §§ 1713 et seq.[3]

---

1. The defenses raised by Kough in his answer were that:

   the Bank of Montreal (the "Bank") misrepresented to him both the nature and extent of his liability under the guarantee;

   the Bank promised to extend long-term financing for the repayment of $718,000 already extended to Arvee Cedar Mills, Ltd. ("Arvee"), but this consideration for Kough's guarantee was not forthcoming; and

   the Bank materially altered the agreement between itself and Kough by extending Arvee's payment deadline, increasing the interest rate, and accepting payments from Arvee, all without Kough's knowledge.

2. At oral argument it developed that Kough has in fact received credit for the value of the pledged IBM stocks. His fourth counterclaim is therefore no longer in issue.

3. The relevant provisions of California Code of Civil Procedure ("CCP") §§ 1713 et seq. are as follows:

   § 1713.2 Applicability
   This chapter applies to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal

therefrom is pending or it is subject to appeal.

§ 1713.3 Recognition and enforcement
Except as provided in Section 1713.4, a foreign judgment meeting the requirements of Section 1713.2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit . . .

§ 1713.4 Grounds for non-recognition
(a) A foreign judgment is not conclusive if
(1) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) The foreign court did not have personal jurisdiction over the defendant; or
(3) The foreign court did not have jurisdiction over the subject matter.
(b) A foreign judgment need not be recognized if
(1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

According to the provisions of that Act, unless one of the grounds for non-recognition listed in § 1713.4 is present, a foreign judgment which is final where rendered is conclusive between the parties to the extent that it grants a recovery of a sum of money, and is enforceable in the same manner as the judgment of a sister state, if that judgment is entitled to full faith and credit. One of the grounds for non-recognition listed in § 1713.4, and the only one in issue here, is the lack of personal jurisdiction over the defendant in the foreign forum. But subsection (a) of § 1713.5 lists six bases of personal jurisdiction over the defendant which will suffice for purposes of recognition of the foreign judgment in California. None of these provisions specifically addresses the situation in this case, in which personal jurisdiction over the defendant in the foreign forum was premised upon what we refer to as long-arm jurisdiction principles. A catch-all provision is provided, however, in subsection (b) of § 1713.5, which reads: "The courts of this state may recognize *other bases* of jurisdiction." (Emphasis supplied.) It was on this latter provision that the district court relied in extending recognition to the foreign judgment against Kough, thus deciding an issue that had not heretofore been presented to a California court.

The district court held that, in the absence of any of the other grounds for non-recognition listed in § 1713.4, the British Columbia judgment would be recognized pursuant to the "other bases of jurisdiction" category set forth in § 1713.5(b) as long as American due process standards were not offended by the Canadian court's assertion of personal jurisdiction over Kough. The issues raised on this appeal, therefore, are: first, whether the British Columbia court's assertion of jurisdiction over Kough was in fact consistent with due process; and second, whether compliance with American due process standards is the only criterion in this case for recognition of the foreign judgment under the "other bases of jurisdiction" category of § 1713.5(b).

*Due Process*

The Supreme Court has repeatedly recognized that a constitutionally valid judgment which is entitled to full faith and credit in sister states may be entered by a state court as long as there is "a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum," and provided that the defendant has received "reasonable notice" of the proceedings against him. *Kulko v. Superior Court of*

(2) The judgment was obtained by extrinsic fraud;

(3) The cause of action or defense on which the judgment is based is repugnant to the public policy of this state;

(4) The judgment conflicts with another final and conclusive judgment;

(5) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

(6) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

§ 1713.5 Personal jurisdiction

(a) The foreign judgment shall not be refused recognition for lack of personal jurisdiction if

(1) The defendant was served personally in the foreign state;

(2) The defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him;

(3) The defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved;

(4) The defendant was domiciled in the foreign state when the proceedings were instituted, or, being a body corporate had its principal place of business, was incorporated, or had otherwise acquired corporate status, in the foreign state;

(5) The defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of the business done by the defendant through that office in the foreign state; or

(6) The defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of such operation.

(b) The courts of this state may recognize other bases of jurisdiction.
Cal.Civ.Proc.Code (West).

*California,* 436 U.S. 84, 91–92, 98 S.Ct. 1690, 1696–97, 56 L.Ed. 132 (1978), and cases cited therein.

■ This appeal involves the recognition by California of the judgment of a Canadian province, not that of a sister state, but the language of § 1713.5(b), authorizing recognition of foreign judgments predicated upon "other bases of jurisdiction," seems to us intended to leave the door open for the recognition by California courts of foreign judgments rendered in accordance with American principles of jurisdictional due process.[4]

■ With respect to both minimum contacts with the forum state and adequate notice, those principles were satisfied in this case. Kough did have substantial contacts with British Columbia not only by means of the execution and breach of the guarantee there, but also by prior negotiations there involving the guarantee and by other promissory notes to the Bank previously executed. Since Kough was served at his California residence, no question can be seriously raised as to the adequacy of the personal service. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 233 (1957); *Forsythe v. Overmyer,* 576 F.2d 779, 783 (9th Cir. 1978).

■ We find no merit in Kough's contention that the district court should have conducted an evidentiary hearing on the nature of his contacts with British Columbia before ruling that the provincial court had personal jurisdiction over him, because the facts are undisputed, and his real objection is to the application of the law to those facts.

*Reciprocity*

■ Kough also invokes the doctrine of reciprocity to defeat the recognition of the Canadian judgment. He predicates this argument upon his contention that British Columbia would refuse to recognize a default judgment rendered against one of its citizens in the United States under similar circumstances, citing *Wedlay v. Quist,* 4 D.L.R. 620 (Alberta S.Ct. 1953); *Webster v. Connors Bros.,* 2 D.L.R. 483 (New Brunswick S.Ct. 1935); Castel, *Canadian Conflicts of Laws* 426 (1975).[5]

The difficulty with appellant's argument is that the section of the Uniform Act specifically dealing with the circumstances where recognition should or may be denied, CCP § 1713.4, makes no mention of reciprocity, and we find nothing in the Act which authorizes us to read such a prerequisite into the statutory scheme by implication.

Indeed, Professor Willis Reese of Columbia Law School and Professor Kurt Nadelmann of Harvard Law School, the draftsmen of the Uniform Act, upon which CCP §§ 1713 *et seq.* are framed, consciously rejected reciprocity as a factor to be considered in recognition of foreign money judgments, apparently on the ground that the due process concepts embodied in the Act were an adequate safeguard for the

---

**4.** "In codifying what bases for assumption of personal jurisdiction will be recognized, which is an area of the law still in evolution, the Act adopts the policy of listing bases accepted generally today and preserving for the courts the right to recognize still other bases . . ." 13 *Uniform Laws Annotated 269* (1975) (Commissioner's Prefatory Note).

In asserting jurisdiction over Kough, the British Columbia court apparently relied on Order XI, Rule 1(e) of its Supreme Court Rules, which provides:

1. Service out of the jurisdiction of a writ of summons or notice of a writ of summons may be allowed by the Court or a Judge whenever:

\* \* \* \* \* \*

(e) The action is in respect of a breach committed within the jurisdiction of a *contract* *wherever made,* even though such breach was preceded or accompanied by a breach out of the jurisdiction which rendered impossible the performance which ought to have been performed within the jurisdiction. (Emphasis supplied.)

If the British Columbia judgment had been obtained after jurisdiction over Kough was secured on the basis of the mere breach of a "contract wherever made," without more, it might be founded upon too tenuous a contact, by American standards of due process. However, we need not reach this issue because Kough did have substantial contacts with the province.

**5.** Though the question is not free from doubt, it seems probable that Kough's contention on this point of Canadian law is correct.

rights of citizens sued on judgments obtained abroad. Transcript, "Proceedings in Committee of the Whole, Uniform Recognition of Foreign-Money Judgments Act," August 5, 1961, at 8–9.[6]

The parties have not cited, and our research has not disclosed any California cases citing reciprocity as a criterion for the recognition of foreign judgments. But it is to be noted that in diversity cases, as to a matter of local law that has not been decided by the highest state court, the opinion of the district judge, as a member of the state bar, will be given great weight, *Bernhardt v. Polygraphic Company of America*, 350 U.S. 198, 204, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956); *Insurance Company of North America v. Thompson*, 381 F.2d 677, 681 (9th Cir. 1967); *Owens v. White*, 380 F.2d 310, 315 (9th Cir. 1967), and will not be overruled unless "clearly wrong." *Hurst v. Dare to be Great, Inc.*, 474 F.2d 483, 484 (9th Cir. 1973); *Owens v. White*, 380 F.2d at 315.[7] The district judge found no basis in the Act for barring recognition of the Canadian judgment for lack of reciprocity, and we agree.

### III

We turn now to Kough's contention that his counterclaims were improperly dismissed under the doctrine of *res judicata*. In arriving at its decision the district court applied the English authority of *Henderson v. Henderson*, 3 Hare 100 (1843), which holds that

> [t]he plea of *res judicata* applies, except in special cases, not only to points upon which the Court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

3 Hare at 115. *Henderson* is also an authority in British Columbia. *Winter v. Dewar & Co.*, 4 D.L.R. 389, 392 (B.C.Ct.App. 1929). According to the trial judge's analysis, which we adopt, all of appellant's counterclaims were so intimately intertwined with plaintiff's cause of action on the guarantee agreement that they fell within *Henderson* and were *res judicata*. Compare Fed.R.Civ.P. 13(a) as to compulsory counterclaims. Kough advances two arguments against the dismissal of his counterclaims on *res judicata* grounds.

First, he maintains that in British Columbia practice a defendant can elect to treat a

---

**6.** Professor Kurt Nadelmann of Harvard Law School, in introducing the Uniform Foreign Money Judgments Recognition Act to the Uniform Law Commissioners, contrasted it with a British statute dealing with recognition of foreign judgments:

> The British Act does not include a due process requirement. Our draft does. I think it would seem obvious that no legislation should be enacted without a due process requirement. The British Act does not contain it because the British Act has a reciprocity clause. The British tried to pick their own partners and they just won't . . . certify the existence of reciprocity if they do not like their partner. These are different approaches, different possibilities. The two draftsmen believe that our draft is sounder.

**7.** The doctrine of reciprocity was first announced by a closely divided Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 210, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (5–4). It has since been recognized in *Cherun v. Frishman*, 236 F.Supp. 292, 294 (D.D.C.1964) (Tamm, *J.*), and by this court in *Her Majesty, Queen in-Right, etc. v. Gilbertson*, 597 F.2d 1161, 1165–66 (9th Cir.

1979). *Gilbertson*, however, appears to be an exception, since it involved the attempted enforcement of a foreign tax judgment against American defendants, in contravention of the general "revenue rule" providing that the courts of one jurisdiction do not recognize the revenue laws of another jurisdiction. *Moore v. Mitchell*, 30 F.2d 600, 604 (2d Cir. 1929) (L. Hand, *J.*, concurring), *aff'd on other grounds*, 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673 (1930).

Reciprocity was rejected in *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926); *Falcon Manufacturing (Scarborough) Ltd. v. Ames*, 53 Misc.2d 332, 278 N.Y.S.2d 684 (Civ.Ct. N.Y.1967); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *Toronto-Dominion Bank v. Hall*, 367 F.Supp. 1009 (E.D.Ark.1973). *See also* Reese, *The Status in This Country of Judgments Rendered Abroad*, 50 Col.L.Rev. 783 (1950); Smit, *International Res Judicata and Collateral Estoppel*, 9 U.C.L.A.L.Rev. 44 (1962).

defense as a counterclaim and that if he does so, it will not be *res judicata* in the disposition of the plaintiff's case against him. As authority for this proposition, he quotes the opinion of a British Columbia law expert, Jacob Kowarsky, and cites the case of *Victoria and Saanich Motor Transportation Co. v. Wood Motor Co.*, 21 B.C. Rep. 515 (Court of Appeals 1915). However, when read in context, Kowarsky's opinion does not support Kough's position. Nor does *Victoria and Saanich Motor Transportation Co. v. Wood Motor Co.* support his claim. It holds that a party's labelling of his pleadings will be followed *for purposes of assessing costs*, but this is not a case of assessing costs. In order, however, to ascertain the true nature of a case, Canadian as well as United States courts consistently ignore the labelling of the pleadings. *Dominion Trust Company v. Brydges*, 2 W.W.R. 952 (S.Ct.1920); *Girardot v. Whelton*, 19 O.P.R. 162 (1900).

Second, Kough claims that Henderson's broad *res judicata* effect does not follow a default judgment, because such judgments should be limited to the issues actually and necessarily adjudicated, citing *Kok Hoong v. Leong Cheong Mines, Ltd.*, 1 All E.R. 300 (P.C.1963) (Malaya); *New Brunswick Rail Co. v. British and French Trust Corporation*, 4 All E.R. 747 (H.L.1938). However, in both of these cases a plaintiff who had prevailed in one action sought an additional recovery in a subsequent proceeding and attempted to use collateral estoppel to preclude the defendant from asserting certain defenses in the second action. Kough's position has no resemblance to these factual contexts because in this case the Bank is not attempting to rely for its recovery on collateral estoppel of another judgment, but is relying on the same and only judgment it obtained in British Columbia. To allow the defenses that Kough now seeks to raise in the guise of counterclaims would undercut the validity of the judgment against him, and permit him to relitigate the case *de novo*. Therefore the counterclaims were properly dismissed.

The decision of the district court is in all respects AFFIRMED.