**PURE FISHING, INC., f/k/a Berkley, Inc., Plaintiff,**

v.

**SILVER STAR CO., LTD., Defendant.**

**No. C00–4071–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

April 15, 2002.

---

7. The dictionary defines "light" as "electromagnetic radiation." WEBSTER'S II NEW COLLEGE DICTIONARY (1995).

Robert D. Sharp of Belin, Lamson, McCormick, Zumbach, Flynn, Des Moines, IA, for Plaintiff.

Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION .................................................... 908

II. FACTUAL BACKGROUND ............................................. 908

III. LEGAL ANALYSIS ................................................ 908

    A. Defendant's Motion To Dismiss ...................................... 908
        1. Standards for motion to dismiss ................................. 908
        2. Analysis of motion ........................................... 909
    B. Plaintiff's Motion For Summary Judgment ........................... 910
        1. Standards for summary judgment ............................... 910
        2. Uniform Foreign Money–Judgments Recognition Act ............... 911
        3. Analysis of motion ........................................... 913
            a. Personal jurisdiction under section 626B.4(1) .................... 913
            b. Personal jurisdiction under section 626B.4(2) .................... 914
                i. Minimum contacts ........................................ 914
                ii. Quantity, quality, and relatedness of contacts ................. 917

IV. CONCLUSION ..................................................... 917

## I. INTRODUCTION

On July 2, 2000, plaintiff Pure Fishing, Inc. ("Pure Fishing") filed this action against defendant Silver Star Co., Ltd. ("Silver Star") seeking enforcement of a judgement obtained by Outdoor Technologies Group Australia ("Outdoor Technologies") against Silver Star in the Federal Court of Australia, New South Wales District, Registry General Division pursuant to Iowa Code Chapter 626B, the Uniform Foreign Money–Judgments Recognition Act. Pure Fishing is the assignee of Outdoor Technologies.

On December 17, 2001, Pure Fishing moved for summary judgment. On December 19, 2001, Silver Star filed a motion to dismiss. In its motion to dismiss, Silver Star seeks dismissal from the case because of a lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] Both parties then sought and were granted extensions of time in which to resist the other party's respective motion. The parties subsequently filed their respective resistances to the other's motion.

## II. FACTUAL BACKGROUND

On November 12, 1996, Outdoor Technologies Group of Australia Pty. Limited filed an action against Silver Star Co., Ltd., in the Federal Court of Australia, New South Wales District Registry General Division. This claim was personally served upon Silver Star's Chief of General Affairs, Cheug Yeun Sam, on January 15, 1997, at 488 Janglim-dong, Saha-ku, Busan, Korea.

On May 30, 1997, Judge Jay Lindgren of the Federal Court of Australia, New South Wales District Registry General Division entered judgement in favor of Outdoor

Technologies and against Silver Star in the sum of $504,019 Australian, together with costs. Outdoor Technologies is now known as Abu Garcia Pty., Ltd. On June 19, 2000, Abu Garcia Pty., Ltd. assigned the May 30, 1997, judgment to Berkley, Inc., the predecessor in interest to Pure Fishing.

## III. LEGAL ANALYSIS

### A. Defendant's Motion To Dismiss

### 1. Standards for motion to dismiss

For purposes of Silver Star's motion to dismiss for lack of personal jurisdiction, the court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.1990). Further, the court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to Pure Fishing. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Although the ultimate burden of proof on the issue of jurisdiction falls upon Pure Fishing, a nonmoving party need only make a prima facie showing of jurisdiction to defeat a motion to dismiss. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998); Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 522 (8th Cir.1996); Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir.1995); Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 914 (8th Cir.1994); Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir.), cert. denied sub nom. Hosoya Fireworks Co., Ltd. v. Barone, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir.1994); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387

---

**1.** Silver Star's motion actually makes reference to Federal Rule of Civil Procedure 12(b)(6). However, because Silver Star is challenging personal jurisdiction in its motion to dismiss, the motion would fall under Federal Rule of Civil Procedure 12(b)(2).

(8th Cir.1991); *cf.  Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."), *cert. denied*, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996).  Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Indus., Inc.*, 946 F.2d at 1387; FED. R. CIV. P. 12(b)(2).  If the court does not hold a hearing and instead relies on pleadings and affidavits, the court must view the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.  *See id.; General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir.1993) (citing *Dakota Indus.*); *Med–Tec, Inc. v. Kostich*, 980 F.Supp. 1315, 1326 (N.D.Iowa 1997); *Woodke v. Dahm*, 873 F.Supp. 179, 192 (N.D.Iowa 1995).

### 2.  Analysis of motion

■  Silver Star contends in its motion that Pure Fishing may not enforce the Australian judgement against Silver Star unless there is some basis for Iowa's exercise of personal jurisdiction over Silver Star. In its resistance to Silver Star's Motion To Dismiss, Pure Fishing asserts that a party seeking enforcement of a foreign judgment under Iowa's version of the Uniform Foreign Money–Judgments Recognition Act need not establish a basis for the exercise of personal jurisdiction over the foreign judgment debtor.

There is scant law interpreting Iowa's version of the Uniform Foreign Money–Judgments Recognition Act, and none addressing the issue before the court. Therefore, the court has turned to decisions interpreting other states' versions of the Uniform Foreign Money–Judgments Recognition Act.  Even here, there is sparse authority.  However, in *Lenchyshyn v. Pelko Elec.*, 281 A.D.2d 42, 723 N.Y.S.2d 285 (N.Y.A.D. 4th Dept.2001), the court held that, under New York's version of the Uniform Foreign Money–Judgments Recognition Act:

> We conclude, however, that a party seeking recognition in New York of a foreign money judgment (whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts.  No such requirement can be found in the CPLR, and none inheres in the Due Process Clause of the United States Constitution, from which jurisdictional basis requirements derive.

*Id.* at 288.  The court notes that New York's version of the Uniform Foreign Money–Judgments Recognition Act is for all practical purposes, identical to Iowa's. In *Lenchyshyn*, after noting that New York's version of the Uniform Foreign Money–Judgments Recognition Act makes no mention of any requirement of personal jurisdiction over the judgment debtor, the court offered the following rational in support of its decision:

> Considerations of logic, fairness, and practicality dictate that a judgment creditor be permitted to obtain recognition and enforcement of a foreign country money judgment without any showing that the judgment debtor is subject to personal jurisdiction in New York. In proceeding under article 53, the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment.  Moreover, it is not inevitable or even likely that any enforcement device ultimately employed by the judgment creditor will operate against the judgment debtor in personam.  Most devices

for the enforcement of money judgments operate in rem against the real or personal property of the judgment debtor, or in personam against third parties, such as banks, investment firms, employers, or other third-party garnishees, obligors or debtors of the judgment debtor.

*Id.* at 291 (citations omitted).

The court finds the rationale of the New York court in *Lenchyshyn* to be persuasive. The Iowa statute itself contains no requirement of personal jurisdiction over the judgment debtor. The court notes that in the context of the recognition and enforcement of other state judgments, the minimum contacts requirement of the Due Process Clause does not prevent a state from enforcing another state's valid judgment against a judgment-debtor's property located in that state, regardless of the lack of other minimum contacts by the judgment-debtor. *See Shaffer v. Heitner,* 433 U.S. 186, 210, 97 S.Ct. 2569, 53 L.Ed.2d 683 n. 36 (1977) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."). The principles announced by the Supreme Court in *Shaffer* would apply no less in the context of the recognition and enforcement of foreign money-judgments under Iowa's Uniform Foreign Money–Judgments Recognition Act. Thus, the court concludes that a party seeking the recognition and enforcement of a foreign judgment under Iowa's Uniform Foreign Money–Judgments Recognition Act is not required to establish a basis for exercise of personal jurisdiction over the judgment debtor. Therefore, defendant Silver Star's Motion to Dismiss is denied.

## B. Plaintiff's Motion For Summary Judgment

### 1. Standards for summary judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). With these standards in mind, the court turns to consideration of Pure Fishing's Motion for Summary Judgment.

## 2. Uniform Foreign Money–Judgments Recognition Act

In 1962, the National Conference of Commissioners on Uniform Laws and the American Bar Association adopted the Uniform Foreign Money–Judgments Recognition Act, thereby codifying long held state rules that had been applied by the majority of courts in the United States. RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW PT. IV, Ch. 8, Introductory Note (1986). The original Prefatory Note to the uniform draft includes the following reasons for proposing this legislation:

In most states of the Union, the law on recognition of judgments from foreign countries is not codified. In a large number of civil law countries, grant of conclusive effect to money-judgments from foreign courts is made dependent upon reciprocity. Judgments rendered in the United States have in many instances been refused recognition abroad either because the foreign court was not satisfied that local judgments would be recognized in the American jurisdiction involved or because no certification of existence of reciprocity could be obtained from the foreign government in countries where existence of reciprocity must be certified to the courts by the government. Codification by a state of its rules on the recognition of money-judgments rendered in a foreign court will make it more likely that judgments rendered in the state will be recognized abroad.

Prefatory Note, Uniform Foreign Money–Judgments Recognition Act § 4, 13 U.L.A.

(1962); *see Bank of Montreal v. Kough,* 430 F.Supp. 1243, 1249 (N.D.Cal.1977) ("[t]he purpose of the Uniform Act was to create greater recognition of the state's judgments in foreign nations ... by informing the foreign nations of particular situations in which their judgments would definitely be recognized"), *aff'd,* 612 F.2d 467 (9th Cir.1980).

Thirty states, including Iowa, have now adopted versions of the Uniform Foreign Money–Judgments Recognition Act.[2] Linda Silberman, *Enforcement and Recognition of Foreign County Judgments in the United States,* 648 Prac. L. Inst. 255, 258 n. 2 (2001). Iowa passed its version of the Uniform Foreign Money–Judgments Recognition Act in 1989. *See* 1989 Iowa Acts Ch. 173. Recognition and enforcement of the Australian judgment in this case is dependant upon application of Iowa's version of the Uniform Foreign Money–Judgments Recognition Act. *See* Iowa Code Ch. 626B.

Under Iowa's Uniform Foreign Money–Judgments Recognition Act, a foreign judgment which is final where rendered is conclusive between the parties to the extent that it grants a recovery of a sum of money unless one of the grounds for non-recognition listed in Iowa Code § 626B.3 is present. *See* Iowa Code § 626B.2.[3] Iowa Code § 626B.3 lists the grounds for non-recognition of a foreign judgment:

1. A foreign judgment is not conclusive in any of the following cases:

a. The foreign judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.

b. Except as provided in section 626B.4, the court of the foreign state did not have personal jurisdiction over the defendant.

c. The court of the foreign state did not have jurisdiction over the subject matter involved in the action.

2. A foreign judgment need not be recognized in any of the following cases:

a. The defendant in the proceedings in the court of the foreign state did not receive notice of the proceedings in sufficient time to enable the defendant to defend against the action.

b. The foreign judgment was obtained by fraud.

c. The cause of action on which the foreign judgment was based is contrary to the public policy of this state.

d. The foreign judgment conflicts with a previous, final, and conclusive foreign judgment or other judgment.

e. The proceeding in the foreign court was contrary to a settlement agreement entered into between the parties prior to the foreign judgment's

---

**2.** Those states which have adopted the Uniform Foreign Money–Judgments Recognition Act are: Alaska, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Virginia, and Washington. Linda Silberman, *Enforcement and Recognition of Foreign County Judgments in the United States,* 648 Prac. L. Inst. at 258.

**3.** Iowa Code § 626B.2 states:

This chapter applies to any foreign judgment which is final and conclusive, and enforceable where rendered even though the judgment is subject to an appeal or an appeal from that judgment is pending. Except as provided in section 626B.3, a foreign judgment is conclusive between the parties to the extent that the judgment grants or denies recovery of a sum of money. The final and conclusive foreign judgment is enforceable in the same manner and to the same extent as the judgment of a sister state which is entitled to full faith and credit.

Iowa Code § 626B.2.

being rendered by the court in the foreign state.

f. The court where the plaintiff is seeking to enforce the foreign judgment determines that jurisdiction in the court of the foreign state was based upon personal service only, and the doctrine of forum non conveniens applies to the original action.

Iowa Code § 626B.3.

### 3. Analysis of motion

#### a. Personal jurisdiction under section 626B.4(1)

In its motion for summary judgment, Pure Fishing contends that none of the grounds for non-recognition listed in Iowa Code § 626B.3 are present in this case and, therefore, the Australian judgment is conclusive. Silver Star counters that because the Australian court did not have personal jurisdiction over it, the Australian judgment is non-conclusive and should not be recognized by the court. Iowa Code § 626B.4 provides that:

1. A foreign judgment shall not be refused recognition in a court of this state for lack of personal jurisdiction if any of the following occurred:

a. The defendant was served personally in the foreign state.

b. The defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or for the purpose of contesting jurisdiction of the court in the foreign state over the defendant.

c. The defendant, prior to the commencement of the proceedings in the court of the foreign state, had agreed to submit to the jurisdiction of that court in

the action concerning the subject matter involved.

d. The defendant was domiciled, had its principal place of business, or otherwise had acquired corporate status in the foreign state when the proceedings were instituted.

e. The defendant had a business office in the foreign state and the proceedings in the court of the foreign state involved a cause of action arising out of business done by the defendant through that office in the foreign state.

f. The defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of that operation.

2. A court of this state may recognize other bases of jurisdiction.

Iowa Code § 626B.4.

Pure Fishing asserts that it has met the personal jurisdiction requirement under Iowa Code § 626B.4(1)(a) because Outdoor Technologies served Silver Star. Silver Star responds that because it was served in South Korea, and not Australia, the country of the foreign judgment, Pure Fishing has not met the service standard under § 626B.4(1)(a). The court agrees with Silver Star that mere service of process in any country does not meet the service standard set out in § 626B.4(1)(a). Section 626B.4(1)(a) specifies that: "The defendant was served personally in *the* foreign state."[4] If service of process in any foreign state was sufficient to meet this requirement, the drafters would not have used the definite article "the" but instead would have used an indefinite article such as "a" or "any." Moreover, because § 626B.4(1)(a) relates back to

---

4. The term "foreign state" is defined in Iowa Code § 626B.1(2) as:

any governmental unit other than the United States, a state, district, commonwealth, territory, insular possession of the United

States, the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands.

Iowa Code 626B.1(2).

§ 626B.3(1)(b), which also uses the term "the foreign state" in discussing personal jurisdiction, in order to be consistent the term "the foreign state" must mean the foreign state in which the foreign judgment was rendered. Thus, because Silver Star was never served in Australia, the court concludes that Pure Fishing has not met the requirements of § 626B.4(1)(a) for establishing personal jurisdiction.

### b. Personal jurisdiction under section 626B.4(2)

Pure Fishing alternatively argues that the court should recognize that Australia had personal jurisdiction over Silver Star pursuant to Iowa Code § 626B.4(2) which permits a court to recognize other bases than the six listed in Iowa Code § 626B.4(1) to establish jurisdiction over a defendant. Thus, § 626B.4(2) allows for a judicially created bases for personal jurisdiction. Consequently, the court must determine here whether there are other bases for personal jurisdiction over Silver Star that an Iowa court would recognize. A review of Iowa case law reveals no Iowa decision interpreting § 626B.4(2), let alone recognizing other bases of jurisdiction under that section. Courts of other jurisdictions, however, have recognized foreign judgments where the bases of the foreign court's jurisdiction are accepted bases for jurisdiction in the United States and which comply with the requirements of traditional notions of fair play and substantial justice under the Due Process Clause. *See Bank of Montreal v. Kough*, 430 F.Supp. 1243, 1247 (N.D.Cal.1977) (Canadian court's personal jurisdiction over defendant must have been, "at a minimum, in compliance with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution."), *aff'd*, 612 F.2d 467 (9th Cir.1980); *see also Nippon Emo–Trans. Co. v. Emo–Trans., Inc.*, 744 F.Supp. 1215, 1230 (E.D.N.Y.1990) (hold-ing that Japanese judgement could be enforced under New York's version of the Uniform Foreign Money–Judgments Recognition Act where, even though bases for jurisdiction articulated by Japanese court were insufficient for jurisdiction under New York law, under the standards of New York and federal constitutional law jurisdiction could properly have been asserted in Japan); *Porisini v. Petricca*, 90 A.D.2d 949, 456 N.Y.S.2d 888, 890 (N.Y.App.Div.1982) (finding that New York's version of the Uniform Foreign Money–Judgments Recognition Act "permits the court to recognize other bases of jurisdiction and New York may, and appropriately should, recognize a foreign judgment predicated on any jurisdictional basis it recognizes in its internal law.") (citation omitted). Thus, the court must determine whether Silver Star's contacts with Australia are sufficient to support jurisdiction under Iowa law. *See Nippon Emo–Trans. Co.*, 744 F.Supp. at 1230 (analyzing whether foreign judgment debtor's contacts with Japan were sufficiently well-developed to support jurisdiction under New York law). Therefore, the court will consider whether the Australian court's personal jurisdiction over Silver Star met the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution such that personal jurisdiction over Silver Star could properly have been asserted in Australia.

### i. Minimum contacts

The determination of whether or not a federal court has personal jurisdiction over a nonresident defendant involves a two-step analysis. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1457–58 (Fed.Cir.1997); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir.1995); *Gould v. P.T. Kraka-*

*tau Steel,* 957 F.2d 573, 575 (8th Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988). First, the court must decide whether the facts satisfy the forum state's long-arm statute. *Northrup King Co.,* 51 F.3d at 1387; *Wines,* 846 F.2d at 42. If the statute has been satisfied, then the court must address whether the facts show that the nonresident has minimum contacts with the forum state such that the court's exercise of jurisdiction would be fair and in accordance with the due process clause of the Fourteenth Amendment. *Northwest Airlines, Inc. v. Astraea Aviation Serv.'s, Inc.,* 111 F.3d 1386, 1390 (8th Cir.1997); *Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1384 (8th Cir.1996); *Genetic Implant Sys., Inc.,* 123 F.3d 1455, 1457–58; *Northrup King Co.,* 51 F.3d at 1387; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Wines,* 846 F.2d at 42.

■ In this case, the long-arm authority for service on Silver Star would lie under Iowa Rule of Civil Procedure 56.2, which gives Iowa courts jurisdiction to the fullest constitutional extent.[5] *See Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980); *Aquadrill, Inc. v. Envtl. Compliance Consulting Serv.'s, Inc.,* 558 N.W.2d 391, 392 (1997) (citing *Larsen* ). Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction over Silver Star would comport with due process. *See Bell Paper Box,*

*Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994).

■ Under the due process clause, the constitutional touchstone is whether Silver Star established sufficient minimum contacts with Australia such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Northwest Airlines, Inc.,* 111 F.3d at 1390. In determining minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In *Dakota Indus.,* the Eighth Circuit Court of Appeals summarized these due process requirements:

> In a series of cases following *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have " 'fair warning' " that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant had 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities."

---

**5.** Rule 56.2 provides, in pertinent part, that [e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such

corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 56.2.

The contacts with the forum state must be more than "'random,'" "'fortuitous,'" or "'attenuated.'" The due process clause forecloses personal jurisdiction unless the actions of the "defendant himself . . . create[d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether assertion of jurisdiction comports with "'fair play and substantial justice.'"

*Dakota Indus.,* 946 F.2d at 1389 (citations omitted); *see also Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.,* 966 F.2d 1247, 1249–50 (8th Cir.1992) (citing same standards); *Gould,* 957 F.2d at 575–76 (citing same standards).

■ In assessing the defendant's "reasonable anticipation" of being haled into court, there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Bell Paper,* 22 F.3d at 818; *Northrup King Co.,* 51 F.3d at 1386–87; *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

■ There are two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Bell Paper,* 22 F.3d at 819. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Sondergard v. Miles, Inc.,* 985 F.2d 1389,

1392 (8th Cir.1993). The non-resident's contacts with the forum may be based on contacts by its representative, in light of the Supreme Court's conclusion that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.,* 471 U.S. at 480 n. 22, 105 S.Ct. 2174.

■ In contrast, general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. 1868. For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic contacts" within the forum. *Helicopteros,* 466 U.S. at 416. "In this situation the forum state has no direct interest in the specific cause of action asserted. Accordingly, contacts of a more extensive quality and nature are required." *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 (5th Cir.1990).

■ The test for evaluating the propriety of personal jurisdiction under the due process clause requires the court to consider the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Northrup King Co.,* 51 F.3d at 1388; *Bell Paper,* 22 F.3d at 818; *Gould,* 957 F.2d at 576 (citing *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977)); *Dakota Indus.,* 946 F.2d at 1390; *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338 (8th Cir.

1983). Of these factors, the first three are the most important. *Northrup King Co.,* 51 F.3d at 1388 (first three factors are closely related, while "[t]he latter two issues are 'secondary factors' in the inquiry"); *Dakota Indus.,* 946 F.2d at 1390. In particular, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contacts with the forum state where the defendant has no office or agent or representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding,* 966 F.2d 1247, 1250 (8th Cir. 1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould,* 957 F.2d at 576.

#### ii. *Quantity, quality, and relatedness of contacts*

██ Although the affidavit of Adrian Cronin which was filed in the Australian case may suggest factors relevant to a minimum contacts analysis, the parties have not addressed the question of whether Silver Star established sufficient minimum contacts with Australia such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice. As a result, the record is insufficiently developed to permit the court to determine whether the Australian court's personal jurisdiction over Silver Star met the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution such that personal jurisdiction over Silver Star could properly have been asserted in Australia. Thus, the court finds that based on the record before it that it cannot determine whether there are other bases for the court to recognize personal jurisdiction over Silver Star pursuant to Iowa Code § 626B.4(2). Because Pure Fishing has not established that the Australian court which entered the judgment at issue in this case had personal jurisdiction over Silver Star, Pure Fishing has failed to establish that the Australian judgment is conclusive. Therefore, Pure Fishing's Motion for Summary Judgement is denied without prejudice.

### IV. CONCLUSION

Initially, the court concludes that a party seeking the recognition and enforcement of a foreign judgment under Iowa's Uniform Foreign Money–Judgments Recognition Act is not required to establish a basis for exercise of personal jurisdiction over the judgment debtor. Therefore, defendant Silver Star's Motion to Dismiss is **denied**. The court further concludes that the record is insufficiently developed to permit the court to determine whether the Australian court's personal jurisdiction over Silver Star met the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution such that personal jurisdiction over Silver Star could properly have been asserted in Australia. Because Pure Fishing has not established that the Australian court which entered the judgment at issue in this case had personal jurisdiction over Silver Star, Pure Fishing has failed to establish that the Australian judgment is conclusive. Therefore, Pure Fishing's Motion for Summary Judgement is **denied without prejudice.**

**IT IS SO ORDERED.**